MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2013 ME 26
Docket:        Cum-12-371
Argued:        January 16, 2013
Decided:       March 5, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
               JABAR, JJ.

SUMMERWIND COTTAGE, LLC et al.

v.

TOWN OF SCARBOROUGH et al.

JABAR, J.

[¶1]  Summerwind Cottage, LLC and Peter and Libby Cassat appeal from a judgment entered in the Superior Court (Cumberland County, *Mills, J.*) affirming the decision of the Scarborough Zoning Board of Appeals (ZBA) granting a setback variance to abutting property owners in the Higgins Beach neighborhood of Scarborough.  Summerwind Cottage argues that the Superior Court's judgment should be vacated because the ZBA erred in relying on the Official Shoreland Zoning Map to conclude that the property was in the buildable Shoreland Overlay District and in concluding that the property met the requirements for a variance. We affirm the court's judgment.

I.  BACKGROUND

[¶2]  Phyllis Scala and her daughter Eralda Adams own a vacant lot in the Higgins Beach area of Scarborough.  The lot was created in 1923 as a part of a

subdivision in the area. The Scala family purchased the lot in 1958, before the zoning ordinances were in place. The family had always planned to build on the lot and consistently mowed and kept a fence on it. In April 2009, Adams sought a variance to build a cottage on the lot to move into following her retirement.

[¶3] The property borders a tidal marsh to the northeast, and is situated between a cottage on the southern side and another vacant lot on the northwestern side, both owned by Summerwind Cottage, LLC. Virdap Street borders the lot to the west, and Peter and Libby Cassat own the land directly across the street. The lot is a narrow wedge shape measuring 50 feet at the street, 200 feet on its longest side, and with 107 feet of frontage abutting the marsh. It is larger than many of the surrounding lots in the neighborhood, and a representative of the Scala family asserted that if they received a variance, the proposed structure would be set back at a similar distance from the marsh as the other homes in the area. The provision in the Shoreland Zoning Ordinance from which Adams sought a variance provided that any building must be set back from the marsh at least seventy-five feet, which she sought to reduce to twenty-five feet.

[¶4] Summerwind Cottage and the Cassats contested the request for a variance at the zoning board hearings. The Scarborough ZBA held a hearing on May 13, 2009, during which it heard arguments and testimony. Two days after the hearing, the ZBA issued a short statement granting the variance. Summerwind

Cottage sought review of the ZBA's action in the Superior Court pursuant to Maine Rule of Civil Procedure 80B, but the court remanded the case, instructing the ZBA to make written findings of fact and conclusions of law. On March 10, 2010, the ZBA held a second hearing without taking additional testimony or hearing arguments. The ZBA issued a written decision on April 14, 2010, concluding that the vacant lot met the undue hardship requirements for a variance because (1) the lot's unsuitability for any of the other permitted uses in the zone meant that it did not have a reasonable return without a variance; (2) the need for the variance was due to the unique shape of the lot; (3) the proposed cottage is consistent with the other properties in the neighborhood and will not alter the essential character of the locality; and (4) the hardship was caused by the enactment of zoning restrictions after the Scala family purchased the lot, not a result of their actions.

[¶5] Summerwind Cottage again sought review in the Superior Court, which concluded that the ZBA did not err with regard to the undue hardship test, but remanded for explicit findings that the property complied with the requirements of the Scarborough Shoreland Zoning Ordinance. On September 14, 2011, the ZBA held a third hearing where it again approved the variance, concluding that because the lot was purchased before the Shoreland Zoning Ordinance was in place, it was "grandfathered" and did not require a variance for the minimum width

4

requirements, and that the remaining provisions either were met or did not apply. In its third review, the Superior Court affirmed the ZBA's decision to grant the variance. Summerwind Cottage and the Cassats filed this timely appeal.

## II. DISCUSSION

### A. Zoning Map

[¶6] Summerwind Cottage contends that the ZBA erred in relying on the Official Shoreland Zoning Map in determining that the property was in the buildable Shoreland Overlay District, rather than in a Resource Protection District. In reviewing a decision by a municipal zoning board of appeals, "[w]e directly review the operative municipal decision at issue, without deference to the Superior Court's ruling on the intermediate appeal." *D'Alessandro v. Town of Harpswell*, 2012 ME 89, ¶ 5, 48 A.3d 786. Because the Official Shoreland Zoning Map is part of Scarborough's local ordinance, the issue of whether the ZBA erred in relying on that map's classification of a particular parcel of land is a matter of interpreting the ordinance.[1] Scarborough, Me. Shoreland Zoning Ordinance § 9(A) (Feb. 6, 2008) ("The areas to which this Ordinance is applicable are . . . shown on the Official Zoning Map *which is made a part of this Ordinance*." (emphasis added)). "The

---

[1] Although the proper method of challenging the validity of the Official Shoreland Zoning Map is through a declaratory judgment action, *see* 14 M.R.S. § 5954 (2012); *Bog Lake Co. v. Town of Northfield*, 2008 ME 37, ¶ 11, 942 A.2d 700, we reach the merits of Summerwind Cottage's appeal on this issue in the interests of judicial economy to avoid remand to the Superior Court to amend the complaint and to address an issue that the court has already heard, *see LaBonta v. City of Waterville*, 528 A.2d 1262, 1263-64 (Me. 1987).

interpretation of a local ordinance is a question of law, and we review that determination de novo." *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 25 (quotation marks omitted).

[¶7] Summerwind Cottage contends that the map's classification of the lot as within the buildable Shoreland Overlay District was clearly wrong because the lot itself was not already developed and building on the lot would be detrimental to the Ordinance's protective goals. The Scarborough Shoreland Zoning Ordinance creates four districts in areas adjacent to protected resources: the Resource Protection District, the Stream Protection District, the Stream Protection 2 District, and the Shoreland Overlay District. Scarborough, Me. Shoreland Zoning Ordinance § 9(A). The Resource Protection District includes all land areas within 250 feet from any wetland "in which developments would adversely affect water quality, productive habitat, biological ecosystems, or scenic and natural values," and "which are rated 'moderate' or 'high' value by the Maine Department of Inland Fisheries and Wildlife." Scarborough, Me. Shoreland Zoning Ordinance § 13(A) (Feb. 6, 2008). Building structures and occupying homes are prohibited activities in the Resource Protection District. Scarborough, Me. Shoreland Zoning Ordinance § 14 (Feb. 6, 2008).

[¶8] When "such areas were already developed at the time of mapping," however, those areas may be included in the Shoreland Overlay District, even if

they are within 250 feet of a protected resource. Scarborough, Me. Shoreland Zoning Ordinance § 13(A). Land use activities in the Overlay District are subject to the requirements of both the Shoreland Zoning Ordinance and the Scarborough Zoning Ordinance, but permitted activities can include building structures and occupying homes, if permitted by the Scarborough Zoning Ordinance for the zone in which the property is located. Scarborough, Me. Shoreland Zoning Ordinance § 14 & n.1.

[¶9] It is undisputed that the marsh abutting the land is a protected resource and that the Official Shoreland Zoning Map places the lot in the Shoreland Overlay District. Summerwind Cottage argues, however, that because section 10 of the Ordinance states that the Official Shoreland Zoning Map is "merely illustrative" of the boundary locations, the map is not entitled to deference by the ZBA or the court. Scarborough, Me. Shoreland Zoning Ordinance § 10 (Feb. 6, 2008). We disagree. Because the Official Shoreland Zoning Map forms a part of the Shoreland Zoning Ordinance, it is the result of the legislative process by the Scarborough Town Council. *See* Scarborough, Me. Shoreland Zoning Ordinance § 8-9 (Feb. 6, 2008) (describing Official Shoreland Zoning Map as part of the Shoreland Ordinance and setting out amendment procedures as requiring "adoption by the municipal legislative body"). *See also F.S. Plummer Co. v. Town of Cape Elizabeth*, 612 A.2d 856, 861 (Me. 1992); *Veerman v. Town of China*,

1994 Me. Super. LEXIS 145, at *3 ("The drawing of zoning map boundary lines is a legislative, not an administrative function."). The decision to place the lot in the Shoreland Overlay District "is entitled to great deference from the courts [and] [a]ccordingly, . . . we limit [our] review [of a zoning ordinance] to a determination of whether the ordinance itself is constitutional, and . . . is in basic harmony with the Town's comprehensive plan." *See Bog Lake Co. v. Town of Northfield*, 2008 ME 37, ¶ 11, 942 A.2d 700 (quotation marks omitted); 30-A M.R.S. § 4314(2) (2012) (providing that portions of shoreland and floodplain zoning ordinances inconsistent with the municipality's comprehensive plan have no effect unless they meet certain statutory exemptions inapplicable to this case). Further, "[a]llowing zoning administrators to amend boundary lines based on their individual view . . . would open the door to considerable mischief in municipal zoning practice." *Veerman*, 1994 Me. Super. LEXIS 145, at *4.

[¶10] Summerwind argues that placing the lot and the surrounding area in the Shoreland Overlay District is inconsistent with the purposes set out in the Shoreland Zoning Ordinance itself. Because our review of the town's legislative acts is limited to constitutionality and harmony with the town's comprehensive plan, Summerwind's arguments do not raise any issue upon which we can vacate the ZBA's interpretation of the ordinance. *See Bog Lake Co.*, 2008 ME 37, ¶ 11, 942 A.2d 700.

8

B.    Variance Requirements

[¶11]   Summerwind Cottage also contends that the ZBA erred in granting the variance because (1) the property did not meet the minimum lot width requirement; (2) the need for a variance was due to the general conditions of the neighborhood, not to the unique conditions of the property; and (3) Scala and Adams failed to establish that the property cannot yield a reasonable return without a variance.   "The municipality's decision is reviewed for error of law, abuse of discretion or findings not supported by substantial evidence in the record." *Toomey v. Town of Frye Island*, 2008 ME 44, ¶ 11, 943 A.2d 563 (quotation marks omitted).   "A court will not substitute its judgment for that of a board."  *Id.* Moreover, "local characterizations or fact-findings as to what meets ordinance standards will be accorded substantial deference."   *Rudolph v. Golick*, 2010 ME 106, ¶ 8, 8 A.3d 684 (quotation marks omitted).

1.    Lot Width

[¶12]  The Shoreland Zoning Ordinance provides that "[t]he minimum width of any portion of any lot within 100 feet . . . of the . . . upland edge of a wetland shall be equal to or greater than 100 feet."   Scarborough, Me. Shoreland Zoning Ordinance § 15(A)(2) (Feb. 6, 2008).   The Scalas' lot measures only fifty feet wide.  Nevertheless, the ordinance provides that

[a] non-conforming lot of record as of the effective date of this Ordinance . . . may be built upon, without the need for a variance, provided that such lot is in separate ownership and not contiguous with any other lot in the same ownership, and that all provisions of this Ordinance except lot size and frontage can be met.

Scarborough, Me. Shoreland Zoning Ordinance § 12(E)(1) (Feb. 6, 2008).[2]  The ordinance defines "non-conforming lots" as "[a] single lot of record which, at the effective date of adoption . . . of this Ordinance, does not meet the area, frontage or *width* requirements of the district in which it is located."  Scarborough, Me. Shoreland Zoning Ordinance § 17 (Feb. 6, 2008) (emphasis added). Therefore, a plain language reading of the Scarborough Shoreland Zoning Ordinance indicates that non-conforming lots explicitly include those lots that do not meet "*width* requirements," and the ZBA did not err or abuse its discretion in determining that the lot did not require a variance as to width.

2.     Unique Circumstances of the Property

[¶13]  The ZBA found that the lot has a unique shape and a viable building envelope that other lots in the area do not have.  Summerwind Cottage argues that the ZBA erred in concluding that the hardship was due to the unique circumstances of this lot, however, because the record reveals that the immediately abutting

---

[2]  The Ordinance was amended in July 2009 to include "lot width" as a specific exception from the variance requirement in section 12(E)(1).  Scarborough, Me. Shoreland Zoning Ordinance § 12(E)(1) (July 15, 2009).  The 2008 ordinance applies to this dispute because this case was pending as of June 11, 2009.  *See* 1 M.R.S. § 302 (2012).  However, the 2009 amendment moves the reference to lot width from the definitions section of the ordinance in section 16 to section 12 and does not change the definition of a "non-conforming lot" in the 2008 ordinance.

vacant lot would have a viable building envelope of twenty-seven feet by fifteen feet if the ZBA granted it the same variance. "In general, the unique circumstance requirement is met when the hardship suffered by the lot owner is not a hardship that is common with other lots in the neighborhood." *Camp v. Town of Shapleigh*, 2008 ME 53, ¶ 11, 943 A.2d 595.

[¶14] At its second hearing, the ZBA addressed the issue of whether the neighboring lot would be buildable if it received the same variance and concluded that it would not be. The ZBA based its conclusion on its finding that the twenty-seven by fifteen-foot building envelope that would be created on the neighboring lot was not a viable size. Further, the ZBA noted that the adjacent lot was not buildable because "even if you reduce the setback to 25 [feet], now you have pushed the building envelope to this [adjacent] lot to the street." Because the record demonstrates that the surrounding lots in the vicinity either already contain residential structures or are of insufficient size to be buildable, even if granted the same variance from the setback requirements, we cannot conclude that the ZBA erred in finding that the circumstances of the lot requesting a variance are unique. *Greenberg v. DiBiase*, 637 A.2d 1177, 1179 (Me. 1994) (concluding that a zoning appeals board did not err in finding that the need for variance was due to the unique circumstances of the property because surrounding lots either already contained residential structures or were large enough to meet the setback

requirements). Moreover, the ZBA found that the lot's wedge shape and the encroachment of the wetlands, which had reduced the lot's size over time, made this parcel unique, and Summerwind Cottage does not controvert these findings. Therefore, the ZBA did not err in concluding that the need for a variance was due to the unique circumstances of the property, and not the general conditions of the neighborhood.

### 3. Reasonable Return

[¶15] Finally, Summerwind Cottage contends that the ZBA erred in finding that any extended recreational uses on this lot were incompatible with both the neighborhood and town ordinances and that no other uses were financially or practically productive. These findings led the ZBA to conclude that there was no reasonable return without a house on the property. Summerwind Cottage argues that the substantial evidence in the record does not support the ZBA's finding, and that the ZBA erred as a matter of law in failing to consider recreation as a viable use.

[¶16] Summerwind Cottage argues that because the Scala family owns a cottage in the same neighborhood, this lot could provide a reasonable return through recreational use by providing access to the marsh, without the need for a variance. We have previously noted that "[r]easonable return is not maximum return," *Curtis v. Main*, 482 A.2d 1253, 1257 (Me. 1984), and "[t]he reasonable

return prong of the undue hardship test is met where strict application of the zoning ordinance would result in the practical loss of all beneficial use of the land." *Toomey*, 2008 ME 44, ¶ 15, 943 A.2d 563 (quotation marks omitted). However, "[e]conomic proof that no reasonable return is possible is not required." *Id.*

[¶17] Summerwind Cottage bases the contention that recreational use is a reasonable return on our analysis in *Toomey v. Town of Frye Island*. 2008 ME 44, ¶¶ 16-18, 943 A.2d 563. In *Toomey*, the landowner sought a variance for a vacant, shorefront lot on Frye Island that was some distance away from another inland lot. *Id.* ¶¶ 2-4. In affirming the ZBA's decision to deny the variance, we noted, "A waterfront lot is a significant benefit to a property owner who owns an inland lot," given the potential for recreational use. *Id.* ¶ 18. The ZBA in this case considered the potential recreational use suggested in *Toomey*, but found that such use was not viable for the Scalas' lot, which borders a marsh, rather than open water.

[¶18] The ZBA found that "the only uses available to the property without a variance are non-productive uses." These findings are supported both by the testimony of David Grysk, the Zoning Administrator for Scarborough, who stated that there are local restrictions on camping and by Phyllis Scala's testimony that her family was not using the property recreationally. On appeal, "in reviewing zoning board action, [we are] not free to make findings of fact independent of those explicitly or implicitly found by the municipal zoning authority." *Driscoll v.*

*Gheewalla*, 441 A.2d 1023, 1026 (Me. 1982). Rather, we are "limited to determining whether from the evidence of record facts could reasonably have been found by the zoning body to justify its decision." *Id.* The evidence of record facts presented here is sufficient to support the ZBA's decision finding that without a variance the property is not suitable for any of the permitted uses in the zone.

[¶19] Summerwind Cottage also challenges the ZBA's finding that a sale to a neighbor would be "forced and would not be at fair market value," and therefore would not be a reasonable return. We have held that the possibility that property might be sold to a neighbor is not sufficient on its own to allow the ZBA to find a reasonable return. *Marchi v. Town of Scarborough*, 511 A.2d 1071, 1073 (Me. 1986). In addressing this issue in *Marchi*, we concluded, "A variance to permit development of a substandard parcel may not be denied solely on the ground that the applicant had an offer of purchase. A landowner has the right to develop his land; he is not required to sell it." *Id.* (quotation marks omitted). Further, there may be room for abutting landowners who oppose the variance request to abuse the variance process if they are able to defeat a neighbor's request for a variance simply by offering to purchase the land and citing that offer as grounds to deny the variance, regardless of whether the offer is genuine. Therefore, the ZBA did not err in failing to take into account evidence of a

potential price offered for the land or in finding that the sale to a neighbor was not a reasonable return.

[¶20] Because the zoning map is a legislative act by the Scarborough Town Council and entitled to our deference, and there is substantial evidence in the record to support the ZBA's decision to grant the variance, we affirm the Superior Court's judgment.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Andrew W. Sparks, Esq., and Nathaniel R. Huckel-Bauer, Esq., Drummond & Drummond, LLP, Portland, for appellants Peter Cassat, Libby Cassat, and Summerwind Cottage, LLC

Shana Cook Mueller, Esq., Bernstein Shur Sawyer & Nelson, Portland, for appellee Town of Scarborough

Jeffrey W. Jones, Esq., Jones & Warren, P.A., Scarborough, for appellees Phyllis E. Scala and Eralda Adams

**At oral argument:**

Nathaniel R. Huckel-Bauer, Esq., for appellants Peter Cassat, Libby Cassat, and Summerwind Cottage, LLC

Shana Cook Mueller, Esq., for appellee Town of Scarborough

Jeffrey W. Jones, Esq., for appellees Phyllis E. Scala and Eralda Adams