MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2015 ME 32
Docket:        Yor-14-298
Submitted
 On Briefs:    December 18, 2014
Decided:       March 17, 2015

Panel:         SAUFLEY, C.J., and MEAD, GORMAN, JABAR, and HJELM, JJ.

FRED FITANIDES

v.

CITY OF SACO et al.

HJELM, J.

[¶1]  Fred Fitanides appeals from a judgment of the Superior Court (York County, *Fritzsche, J.*) affirming two decisions of the Saco Zoning Board of Appeals (ZBA).  The ZBA affirmed the Saco Planning Board's issuance of conditional use permits to Wayne and Michelle McClellan for construction of a disc-golf course on property abutting a campground owned by Fitanides.  Because the permits were issued in compliance with the City of Saco Zoning Ordinance, and because Fitanides was not prejudiced by procedural irregularities in the administrative process, we affirm the judgment.

## I. BACKGROUND

[¶2]  In March 2013, Wayne and Michelle McClellan applied for a conditional use permit to build a disc-golf course[1] in Saco on land abutting a campground owned by Fred Fitanides.  The proposed site for the course is located on two parcels of land, one owned by Elegant Homes, Inc., and the other by the Gordon O'Donnell Living Trust.  Michelle McClellan is the principal beneficiary of the trust and the manager of Elegant Homes.

[¶3]  The proposed site is situated in several different zoning districts.  It is located partially in the B-6 district and partially in the B-2a district, and an area surrounding a stream that runs through the property is in the Resource Protection (RP) district.  In addition, a portion of the project site is within a Mobile Home Parks (MHP) Overlay district.  The B-2a and B-6 districts require a conditional use permit for "[o]utdoor commercial recreational facilities," *see* Saco, Me., Zoning Ordinance §§ 410-6A, 410-9A (April 7, 2003), and the RP district requires a conditional use permit for "[r]ecreation uses involving minimal structural development," Saco, Me., Zoning Ordinance § 410-15 (April 5, 2002).  The

---

[1] According to one of the conditional use applications,

> Disc golf is played like conventional golf, with one exception: instead of clubs and balls the player uses a disc.  The game starts at the first tee where the player selects a disc that is suited for the terrain and obstacles.  The player will continue to throw discs until the target is reached.  The target is a basket on a pole with chains suspended above it, to stop the disc and allow it to drop into the basket.  The play for the hole ends when the disc is in the basket.  Game play continues through the course until each of the 18 holes have been played.

McClellans applied for both types of conditional use permits. Later, the Planning Board determined that an additional conditional use permit was necessary in the RP district for a footbridge that the McClellans planned to construct over the stream, and the McClellans submitted an application for that permit in July 2013. No application was submitted for conditional approval in the MHP Overlay district.

[¶4] The Planning Board held two public hearings on the disc-golf project, and Fitanides spoke at both meetings. At the end of the second meeting, on May 7, 2013, the Planning Board voted to grant conditional approval for the project and issued conditional use permits for construction in the RP and B-6 districts.[2] One of the conditions of approval was that "[n]o deviations from the approved plans are permitted without prior approval from the Planning Board for major changes, and from the City Planner for minor changes. The determination of major or minor shall be made by the City Planner." On June 5, 2013, Fitanides appealed the conditional use approval to the ZBA, contending, among other things, that the project did not comply with the requirements of the MHP Overlay district and that the Board improperly delegated review of minor changes to the City Planner.

---

[2] The Planning Board did not issue a conditional use permit for construction in the B-2a district. We need not determine whether such a permit was necessary, however, because Fitanides does not challenge that decision on appeal, and, in any event, the standards for obtaining a permit in the B-2a district are identical to those for obtaining a permit in the B-6 district.

4

[¶5]  Prior to the ZBA's consideration of the appeal, the City Planner sent an email to the ZBA stating that "[Fitanides] has demonstrated numerous times in the past that litigation is little more than a hobby of his" and urging the ZBA not to "compound the injury inflicted on the applicant by [Fitanides] by dragging this unfounded appeal on any longer."  After the ZBA held a public hearing on the appeal on July 1, 2013, it voted to affirm all aspects of the Board's decision except the delegation of authority to the City Planner to approve minor changes to the approved plans.  The ZBA issued a written decision on July 16, 2013, remanding the matter to the Board with instructions "to amend Condition of Approval #2 [the delegation to the City Planner] to comply with the Saco Zoning Ordinance." Fitanides filed a complaint in the Superior Court pursuant to M.R. Civ. P. 80B, seeking review of the ZBA's decision.

[¶6]  On July 23, 2013, the Planning Board held a hearing to consider the McClellans' application for a conditional use permit for the footbridge.  Fitanides spoke in opposition, but the Board voted to approve the permit.  At the same meeting, the Planning Board considered the ZBA's order remanding the permit for amendment of the condition delegating approval to the City Planner.  The Board, however, voted to reaffirm its May decision without change.  Fitanides filed appeals of those decisions with the ZBA, and after a public hearing held on October 7, 2013, the ZBA voted to deny both appeals.

[¶7]   On November 4, 2013, Fitanides filed a Rule 80B complaint seeking judicial review of the ZBA's October 2013 decision.  The court consolidated the two Rule 80B actions, and, following oral argument, affirmed both ZBA decisions.  Fitanides filed a timely appeal of that judgment pursuant to M.R. Civ. P. 80B(n), 14 M.R.S. § 1851 (2014), and M.R. App. P. 2.

## II.  DISCUSSION

[¶8]   When reviewing a challenge to a municipal decision pursuant to M.R. Civ. P. 80B, "we review directly the operative decision of the municipality." *Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 7, 868 A.2d 161 (quotation marks omitted).  The operative decision here is that of the Planning Board because the Ordinance authorizes the ZBA to act only in an appellate capacity, *see* Saco, Me., Zoning Ordinance § 901-10 (June 18, 1987), and because the ZBA did so in this case. *See Mills v. Town of Eliot*, 2008 ME 134, ¶¶ 14-16, 955 A.2d 258.  We review the Planning Board's decision for "error of law, abuse of discretion or findings not supported by substantial evidence in the record." *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 8, 746 A.2d 368 (quotation marks omitted).  Fitanides bears the burden of persuasion on appeal because he seeks to vacate the Planning Board's decision. *See Bizier v. Town of Turner*, 2011 ME 116, ¶ 8, 32 A.3d 1048.

6

[¶9]  The Planning Board voted twice on the conditional use permits for the disc-golf course—once when the permits were issued in May and again in July following the ZBA's remand.  Although there were two votes, however, the Board issued the permits only once, merely voting the second time to keep the permits unchanged.  There is therefore only one operative decision for our review: the Board's decision to grant conditional approval and issue the permits to the McClellans.

A.    Procedural Error

[¶10]  Fitanides contends that the Planning Board improperly disregarded the ZBA's order to amend the permit.  Because the ZBA has appellate authority over the Board, we agree that the Board acted improperly when it disregarded the ZBA's instructions to amend the permit.  *See Crosby v. Town of Belgrade*, 562 A.2d 1228, 1230-31 (Me. 1989) (holding that the Town was bound by a prior adjudication of the zoning board of appeals).  That error has no bearing on the outcome of this appeal, however, because we review directly the decision of the Planning Board to grant conditional approval to the project, and that decision was not affected by the Board's procedural error.  Similarly, we do not consider Fitanides's argument that the ZBA lacked authority to remand the permit to the Planning Board for amendment because we review the decision of the Planning

Board directly, and any error in the decision by the ZBA is irrelevant to that review.

B.      Delegation of Authority to the City Planner

[¶11]    Fitanides contends that the Planning Board erred in issuing a conditional use permit with a condition that allowed the City Planner to approve minor changes to the project plans.  He argues that no provision of the Ordinance or any statute authorizes the City Planner to make decisions regarding minor changes to conditional use plans.

[¶12]  Title 30-A M.R.S. § 4352 (2014) gives municipalities the authority to "provide for any form of zoning" consistent with the statute.  State law, embodied in section 4352 and elsewhere, does not directly control delegation of zoning decisions among municipal boards, departments, or officers, leaving those matters to individual town ordinances.[3]  Consequently, the Planning Board erred only if the condition delegating authority to the City Planner violated the Saco Zoning Ordinance.

---

[3]  We have held that it is unconstitutional for a zoning ordinance to delegate decision-making to a Planning Board or other entity "without a sufficiently detailed statement of policy to[] furnish a guide which will enable those to whom the law is to be applied to reasonably determine their rights thereunder, and so that the determination of those rights will not be left to the purely arbitrary discretion of the administrator."  *Cope v. Inhabitants of Town of Brunswick*, 464 A.2d 223, 225 (Me. 1983) (quotation marks omitted).  We have recognized, however, that a specific conditional use contained in an ordinance provides such a guide, *see id.* at 226-27, and here the City of Saco goes further by providing a comprehensive list of standards for determining whether a conditional use should be approved, *see* Saco, Me., Zoning Ordinance § 901-4 (April 30, 2007).  Thus, constitutional concerns regarding the delegation of legislative authority are not implicated in this case.

[¶13] Interpretation of the Ordinance is a question of law that we review de novo. *See Wister v. Town of Mount Desert*, 2009 ME 66, ¶ 17, 974 A.2d 903. "We examine an ordinance for its plain meaning" and "construe undefined or ambiguous terms reasonably with regard to both the objects sought to be obtained and to the general structure of the ordinance as a whole." *Friends of Congress Square Park v. City of Portland*, 2014 ME 63, ¶ 9, 91 A.3d 601 (quotation marks omitted).

[¶14] Fitanides concedes that the Ordinance does not contain any provision that prohibits the Planning Board from delegating some tasks to the City Planner. He argues, however, that the Ordinance does not affirmatively grant the Planning Board power to authorize the City Planner to approve minor deviations from conditional use plans, and that it is thus prohibited from doing so. That argument is not supported by the plain language of the Ordinance, which provides that "[t]he Planning Board may attach such conditions, in addition to those required elsewhere in this Ordinance, that it finds necessary to further the purposes of this Ordinance." Saco, Me., Zoning Ordinance § 901-6 (June 18, 1987). The condition delegating decision-making to the City Planner furthers the purposes of the Ordinance by ensuring that even minor deviations from the approved plans will be subject to municipal review for compliance with zoning and building laws, without unduly burdening the Planning Board.

[¶15]   Furthermore, authorizing the City Planner to approve minor changes is consistent with other provisions of the Ordinance that delegate similar tasks to that official.  For example, the City Planner is responsible in the first instance for approving "minor conditional uses," *see* Saco, Me., Zoning Ordinance § 901-12 (June 18, 1987), as well as "minor site plan[s]," *see* Saco, Me., Zoning Ordinance § 1103(7) (Feb. 19, 2002).  In addition, the permit condition at issue here is almost identical to the provision governing changes to site plans, which states that "[a]ny changes in the plan after approval must be approved by the Planning Board," but that "[m]inor changes during construction can be approved by the City Planner." Saco, Me., Zoning Ordinance § 1109 (1985).  Therefore, the condition delegating authority for approval of minor changes to the City Planner is consistent with the Ordinance, and the Planning Board did not err in including it in the permit issued to the McClellans.[4]

C.     Mobile Home Parks Overlay Zone

[¶16]   Fitanides argues that the Planning Board erred by failing to issue a conditional use permit for the MHP Overlay zone.  "Whether a proposed use falls

---

[4]  Fitanides argues that delegating authority for approving minor changes to the City Planner deprives abutters and other interested parties of an opportunity to be heard regarding those changes.  Pursuant to 30-A M.R.S. § 4353(1) (2014), however, every zoning board of appeals "shall hear appeals from any action or failure to act of the official or board responsible for enforcing the zoning ordinance, unless only a direct appeal to the Superior Court has been provided by municipal ordinance."  That provision suggests that Fitanides could appeal the City Planner's decision to the ZBA and thus have an opportunity to be heard.

within the terms of a zoning ordinance is a question of law that we review de novo." *Lane Const. Corp. v. Town of Washington*, 2008 ME 45, ¶ 13, 942 A.2d 1202.

[¶17]  The relevant section of the Saco Zoning Ordinance provides: "Once a mobile home park is approved by the Planning Board, the uses in the parks are limited to the following permitted and conditional uses . . . ."  Saco, Me., Zoning Ordinance § 410-18 (May 9, 1990).  This language clearly demonstrates that the MHP Overlay district does not apply before a mobile home park has been approved for construction.  Because no park was ever approved for the proposed site of the disc-golf course, the property was not subject to the requirements of the MHP Overlay district.

[¶18]  This construction of the Ordinance is further supported by the provision allowing property approved for use as a mobile home park to be converted to other uses, including uses that would be conditional or prohibited in the MHP Overlay district.  *See* Saco, Me., Zoning Ordinance § 704-1 (May 9, 1990).  That provision would not make sense if land in the MHP Overlay district remained subject to those restrictions even if a mobile home park did not exist there.  Moreover, if the MHP Overlay restrictions always applied to land in the district, even where mobile home parks had not been approved, it would be illogical to include that same land in the B-2a and B-6 districts.  *See Adams v.*

*Town of Brunswick*, 2010 ME 7, ¶ 11, 987 A.2d 502 (stating that "[t]he provisions of the Ordinance should be construed harmoniously" (quotation marks omitted)). Therefore, we hold that the Planning Board did not err by failing to apply the restrictions of the MHP Overlay to the McClellans' project.

D.     Due Process

[¶19]  Fitanides also contends that the ZBA denied him due process during the appeals process in two ways: that it based its decision to deny his second appeal on a copy of an email that was not in the record before the Planning Board, and that the ZBA was biased by the City Planner's email encouraging it to deny Fitanides's appeal in part because of his history of litigation.

[¶20]  First, Fitanides has not demonstrated that he was prejudiced by the ZBA's consideration of a copy of an email that was not found in the Planning Board record.  At the October 2013 hearing on Fitanides's appeal of the footbridge conditional use permit, the ZBA could not locate an email that Wayne McClellan sent to the Planning Board requesting a waiver of certain application requirements, and it requested that McClellan retrieve the email from his computer.  Fitanides does not dispute, however, that the Planning Board received McClellan's waiver request before its July 2013 meeting and that it considered and voted on the request.  Fitanides has therefore not shown any prejudice due to the ZBA's consideration of a copy of the waiver request when the contents of the email were

not new or extrinsic to the record. *See White v. Town of Hollis*, 589 A.2d 46, 48 (Me. 1991) (affirming the town zoning board's decision because the plaintiff had not shown that she would have prevailed had the board followed the proper procedure).

[¶21]  Second, as the City acknowledges in its brief, the City Planner acted unprofessionally when he sent an email to the ZBA disparaging Fitanides's assertion of his rights in the zoning proceedings and encouraging the ZBA to rule against Fitanides because of his involvement in prior litigation with the Town. Such comments from a municipal official have no place in municipal proceedings because they create a public perception of bias and may raise questions about a municipality's willingness to consider the contentions of its citizens in a fair and responsible way.   As the trial court observed, Fitanides has the right to "vigorous[ly]" protect his property interests and in fact "has often been successful in his appeals," including his appeals to this Court. *See Fitanides v. City of Saco*, 2004 ME 32, ¶ 36, 843 A.2d 8.

[¶22]  Although we conclude that the City Planner's email to the ZBA was wholly inappropriate, we must review the record to determine if it caused prejudice to Fitanides.[5]  "A party before an administrative board is entitled to a fair and

---

[5]  As discussed above, the operative decision that we review is that of the Planning Board, not the ZBA.  We have not had the opportunity to address the effect of a ZBA's due process violation on the

unbiased hearing . . . ." *Lane Const. Corp.*, 2008 ME 45, ¶ 29, 942 A.2d 1202. Here, however, the record does not demonstrate that the ZBA was influenced or affected by the email. *See Duffy v. Town of Berwick*, 2013 ME 105, ¶ 20, 82 A.3d 148. A biased statement by a municipal officer who is not a member of the ZBA is not sufficient to impute bias to the ZBA, *see Gorham v. Town of Cape Elizabeth*, 625 A.2d 898, 902 (Me. 1993), and Fitanides has not presented any evidence of bias harbored by any of the ZBA members themselves. To the contrary, Fitanides was given ample opportunity to fully participate in the permit process and to present arguments during the ZBA hearing. The ZBA discussed all of the issues in Fitanides's appeal "with a view toward making a sincere effort to fairly decide the issue before them," *id.* at 903, and even after receiving the email, the ZBA ruled in Fitanides's favor on the issue of delegation to the City Planner. Therefore, we conclude that Fitanides has not demonstrated that the City Planner's inappropriate actions violated his due process rights in the ZBA's proceedings.

### III. CONCLUSION

[¶23] Fitanides was not prejudiced by any procedural mistakes that occurred during the municipal proceedings, and the Planning Board did not err in interpreting and applying the Ordinance. Further, we find no merit in Fitanides's

---

outcome of an appeal in which we are reviewing directly the decision of a planning board, and we need not reach that issue here because we conclude that Fitanides's due process rights were not violated.

remaining contentions that the Planning Board's findings of fact lacked support in the record. *See Summerwind Cottage, LLC v. Town of Scarborough*, 2013 ME 26, ¶ 18, 61 A.3d 698.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

Fred Fitanides, appellant pro se

Timothy S. Murphy, Esq., Prescott, Jamieson, Nelson & Murphy, LLC, Saco, for appellee City of Saco

Susan B. Driscoll, Esq., Bergen & Parkinson, LLC, Saco, for appellees Gordon O'Donnell Living Trust, David Ordway, Elegant Homes, Inc., Cascade Flea Market, LLC, Wayne McClellan, and Michelle McClellan