MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:       2026 ME 53
Docket:         Yor-25-345
Argued:         March 4, 2026
Decided:        June 2, 2026

Panel:          STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, and DOUGLAS, JJ.

MICK LAND DEVELOPMENT, INC.

v.

TOWN OF SOUTH BERWICK

CONNORS, J.

[¶1]  In this appeal pursuant to M.R. Civ. P. 80B, Mick Land Development, Inc. (Mick Land) asks the court to strike an access condition imposed by the South Berwick Planning Board (Board) when it approved Mick Land's proposed subdivision.  The Superior Court (York County, *Mulhern, J.*) affirmed the Board's decision.  We also affirm.

## I.  BACKGROUND

[¶2]  In a nutshell, Mick Land wanted and expected the primary access to the subdivision to be from one road, with a second road to serve as the emergency access, while the Board approved the subdivision conditioned on the second road as the primary access and the first road as only an emergency access.  The details that follow are taken from the administrative and

2

procedural record. *See Stiff v. Town of Belgrade*, 2024 ME 68, ¶ 2, 322 A.3d 1167.

[¶3]   In April 2022, Mick Land applied to the Board to develop a subdivision in South Berwick called Samville Estates (Samville).  Mick Land proposed two access points for the subdivision: Meadow Pond Road, which runs through a neighboring subdivision called Meadow Pond Estates, and Industry Drive, which runs through the neighboring town of Berwick.[1]

[¶4]   The Board began reviewing the application under the Town's subdivision ordinance and its site plan review ordinance, each of which provided for review in stages.  *See* South Berwick, Me., Code §§ 121-4(C), 140-77(C)(3)-(8) (Oct. 24, 2017).  On January 4, 2023, the Board accepted a sketch plan for Samville and moved the application to the preliminary plan stage of review.  The Board had before it a preliminary traffic impact study based on the use of Meadow Pond Road as the primary point of access to Samville, with Industry Drive as a secondary emergency access point.  The traffic impact study indicated that there would be "no significant impact off-site beyond the access drive on capacity or traffic operations," that there were "no

---

[1]  Mick Land, which previously developed Meadow Pond Estates Phases I and II, asserts that Samville Estates was a planned "Phase III" of the Meadow Pond Estates subdivision.  This was disputed before the Board.

high crash locations within the vicinity of the site," and that "sight distances from the proposed access points will exceed the recommended minimums."

[¶5]   In an application dated March 28, 2023, Mick Land submitted a preliminary plan to the Board again showing Meadow Pond Road as the primary access point and Industry Drive as a secondary access point limited to emergency use.  The Board discussed the preliminary plan at its meeting on April 19, 2023, at which an attorney representing the homeowners' association (HOA) for Meadow Pond Estates argued that the additional traffic on Meadow Pond Road would present a danger because Meadow Pond Road was curvy, visibility was poor, and traffic would flow through the most congested part of Meadow Pond Estates.

[¶6]   On May 3, 2023, the Board conducted a site walk.  That same day, the Board held a public hearing on the application.  At this hearing, residents from Meadow Pond Estates expressed concerns about the use of Meadow Pond Road to access Samville, stating that there were blind spots on Meadow Pond Road, that exiting from Meadow Pond Road onto the adjoining road was dangerous, and that children biked and rollerbladed there.  The HOA president also emailed the town planner on May 5, stating that it was much easier to exit the development onto Route 4 from Industry Drive, that "the start of Meadow

4

Pond R[oa]d is a curvy, not high-traffic optimized route," and that visibility was poor when exiting Meadow Pond Road.

[¶7] The Board continued to review the application and to consider the access issue for much of 2023. At the Board's meeting on November 15, 2023, the Chair proposed that Industry Drive serve as the primary point of access to Samville and that access from Meadow Pond Road would be for emergencies only. The Board took no action on the Chair's proposal but instead accepted Mick Land's preliminary plan for Samville, with the understanding that access would remain an "open issue[]."

[¶8] Mick Land then filed revised site plans that did not restrict Industry Drive to emergency access. On February 21, 2024, the Board conducted final plan review of the application. It approved the final plan with the condition that Meadow Pond Road would be limited to emergency access.

[¶9] On March 6, 2024, the Board voted to approve written Findings of Fact and Conditions of Approval. In these written findings, the Board noted the subdivision ordinance's requirement that "[t]he subdivision will not cause unreasonable highway or public road congestion or unsafe conditions with respect to use of the highways or public roads, existing or proposed," *see* South Berwick, Me., Code § 121-12(E) (Oct. 10, 2017), and found the following:

> This standard has been met. A Traffic Impact Assessment was completed with a date of October 13, 2022 and is within the application documents. To limit residential traffic from this development from traveling through the existing Meadow Pond Phases 1 and 2, the Planning Board imposed Condition 6. This condition requires a sign stating "emergency access only" on the roadway connecting the new development and Meadow Pond Phases 1 and 2, which allows for a 2nd point of egress in the case of emergency but does not cause undue burden on the residential roadways existing in Meadow Pond Phases 1 and 2. All residential traffic from the new development must utilize the [I]ndustry [D]rive entrance, except in case of an emergency.

The Board then included as a condition of approval Condition 6, which required that "[t]he new private road access from Meadow Pond Road into Samville Estates Subdivision will be posted with appropriate road signs stating, 'Emergency Access Only,' and 'No Thru Way.'"

[¶10] Mick Land filed a complaint in the Superior Court seeking judicial review of the Board's decision under M.R. Civ. P. 80B. This proceeding was stayed while Mick Land pursued an application with the Board to amend the site plan approval by modifying Condition 6. The Board voted to deny the application to amend and issued findings of fact stating that the Board "had concerns about the potential need for a traffic study for the Industry Drive access and decided that there wasn't enough information to amend condition 6."

6

[¶11]  Mick Land filed a second Rule 80B complaint for review of the Board's latest decision, which appeal was consolidated with the previous complaint.

[¶12]  In December 2024, the court remanded the matter to the Board to develop further findings of fact and conclusions of law.  On January 9, 2025, the Board issued remanded Findings of Fact, Conclusions of Law and Decisions. The additional findings and conclusions focused on the evidence regarding adverse impact on traffic safety absent the condition with respect to pedestrian and bicycle traffic, noting, inter alia, that residents had stated that eighteen children resided in Meadow Pond Estates "with many of them biking and rollerblading around the road."  Condition 6, the Board concluded, would reduce the amount of added traffic to that area, mitigating the danger to that pedestrian and bicycle traffic.

[¶13]  Regarding Mick Land's application to amend Condition 6, the Board stated that "[t]he applicants didn't provide any new evidence beyond what had already been in the record and had been determined to be insufficient to accommodate the necessary health and safety standards, which resulted in the condition being imposed."

[¶14]  On January 15, 2025, the remanded findings were filed with the Superior Court.[2]  On May 6, 2025, after consideration of the Board's findings and conclusions on remand, the court denied Mick Land's Rule 80B appeal. Mick Land then timely appealed to us.  *See* M.R. App. P. 2B(c)(1)-(2).

## II.  DISCUSSION

[¶15]  Mick Land articulates its challenge to the access condition in various ways, but the gist of its position is that the condition is (A) not permitted under the language of the applicable ordinances, (B) not supported by substantial evidence, and (C) otherwise arbitrary and capricious.

[¶16]  "In a Rule 80B appeal, the Superior Court acts in an appellate capacity, and, therefore, we review the Planning Board's decision directly . . .

---

[2] After the Board issued its findings on remand, Mick Land moved in the Superior Court (with the consent of the Town) for the court to amend its order of remand so that the court retained jurisdiction.  This motion was timely under M.R. Civ. P. 59(e).  The court granted the order, and the matter proceeded without a new Rule 80B complaint filed.  We note that this is not the usual course of action under Rule 80B.  Rule 80B(m) provides that the Superior Court normally does not retain jurisdiction upon remand to a municipal entity.  M.R. Civ. P. 80B(m); *see Penkul v. Town of Lebanon*, 2016 ME 16, ¶ 6 n.4, 136 A.3d 88 ("This case highlights the confusion that may be generated when the trial court purports to 'retain jurisdiction' after remanding a matter to a government decision maker.  The clearer practice is for the court to enter a final judgment remanding the matter.  The proceedings undertaken on remand will clarify whether any subsequent appeal might be taken and which entities will have the complete administrative record.").  Although we have sometimes used unclear language regarding the finality of a remand order by the Superior Court, we and the Rule are clear that such a remand order is not a final judgment for the purpose of immediate appeal to us, but is a final judgment for the purpose of requiring a new Rule 80B complaint after the remand, with the arguments raised in the first action preserved for review in the second appeal.  *See* M.R. Civ. P. 80B(m).  As *Penkul* notes, this process recognizes that a second appeal after the remand is not automatic, in that the issues concerning the appellant may be mooted on remand.  *See Penkul*, 2016 ME 16, ¶ 6 n.4, 136 A.3d 88; *see also Doggett v. Town of Gouldsboro*, 2002 ME 175, ¶ 7, 812 A.2d 256.

for errors of law, abuses of discretion, or findings not supported by substantial evidence in the administrative record." *Bryant v. Town of Wiscasset*, 2017 ME 234, ¶ 11, 176 A.3d 176 (alteration and quotation marks omitted). Mick Land bears the burden of persuasion on appeal as the party seeking to vacate the Board's decision. *Bizier v. Town of Turner*, 2011 ME 116, ¶ 8, 32 A.3d 1048.

## A. The Board had the authority under the subdivision ordinance to impose Condition 6.

[¶17] Mick Land argues that the Board lacked authority to impose Condition 6 because that the Town's subdivision ordinance does not authorize the Board to conditionally approve a subdivision or, alternatively, because the Board found that Samville met all standards under the subdivision ordinance. This argument presents a question of law that we review de novo. *Newfield Sand v. Town of Newfield*, 2025 ME 45, ¶ 11, 335 A.3d 626.

[¶18] A municipal planning board has no inherent authority and may only exercise such authority as the municipality has conferred upon it by ordinance. *See id.* ¶ 14. That said, the Board is not limited to express grants of authority, but also has all powers granted "by necessary inference as an incidence essential to the full exercise of powers specifically granted." *See id.* (quotation marks omitted); *Total Quality, Inc. v. Town of Scarborough*, 588 A.2d 283, 285 (Me. 1991) (upholding conditions imposed by a planning board,

noting that they were "reasonable means of achieving the goals stated in the [o]rdinance of promoting traffic safety and minimizing the impact of the property use on abutting properties").

[¶19]  Here, the subdivision ordinance authorizes the Board to "modify and approve" final subdivision applications and requires that the Board state on the record "[t]he reasons for any modification required."  South Berwick, Me., Code § 121-36(D) (Oct. 17, 2017).  The subdivision ordinance also includes review criteria that the Board "shall consider" in reviewing subdivision applications, including that the subdivision "will not cause . . . unsafe conditions with respect to use of the . . . public roads."  *Id.* § 121-12(E).  Read together, these provisions authorize the Board to impose conditions on final subdivision plans to ensure compliance with the review criteria.

[¶20]  Mick Land argues that, even if the subdivision ordinance provides textual support for the Board's authority to conditionally approve subdivision plans, such a grant of authority is an unlawful delegation of legislative power because "there is no guidance in the Subdivision Ordinance as to what circumstances would permit the Board to add conditions, or what . . . conditions are permitted."  Relatedly, Mick Land argues that the Board cannot rely on the subdivision review criteria to support Condition 6 because the Board found

that all the review criteria, including the absence of unsafe conditions on the public roads, were met.

[¶21] It is "unconstitutional for a zoning ordinance to delegate decision-making to a Planning Board or other entity without a sufficiently detailed statement of policy to furnish a guide which will enable those to whom the law is to be applied to reasonably determine their rights thereunder, and so that the determination of those rights will not be left to the purely arbitrary discretion of the administrator." *Fitanides v. City of Saco*, 2015 ME 32, ¶ 12 n.3, 113 A.3d 1088 (alteration and quotation marks omitted). Here, however, there is no such delegation problem. The Board based Condition 6 on section 121-12(E) of the subdivision review criteria, which prohibits unsafe conditions on the public roads—a "sufficiently detailed statement of policy." *See id.* (quotation marks omitted). Although the Board stated that section 121-12(E) had "been met," it immediately followed that statement with a clarification that it was imposing Condition 6 to ensure compliance with this section. It is clear from reading the Board's findings and decisions as a whole that the Board concluded that Samville met section 121-12(E) only after the imposition of Condition 6.[3]

---

[3] We do not reach the town's argument that Condition 6 is additionally or alternatively supported by language in the site plan review ordinance.

**B.     Condition 6 was supported by substantial evidence in the record.**

[¶22]   Mick Land argues that the record lacks substantial evidence supporting the imposition of Condition 6.  Although Mick Land acknowledges that the record contains factual support for the Board's decision in the form of safety concerns from Meadow Pond Estates residents, it argues that such evidence is limited to "speculative lay opinions and generalized fears about traffic and safety, uncorroborated by any expert study, Town staff corroboration, or any other competent record data," which it claims are insufficient as a matter of law to support the Board's decision.

[¶23]  The court in a Rule 80B appeal reviews a municipal board's factual findings to determine if they are supported by substantial evidence in the record.  *Wister v. Town of Mount Desert*, 2009 ME 66, ¶ 27, 974 A.2d 903.  "Substantial evidence exists if there is any competent evidence in the record to support a decision."  *21 Seabran, LLC v. Town of Naples*, 2017 ME 3, ¶ 10, 153 A.3d 113 (quotation marks omitted).  "A demonstration that no competent evidence supports the local board's findings is required in order to vacate the board's decision."  *Thacker v. Konover Dev. Corp.*, 2003 ME 30, ¶ 8, 818 A.2d 1013.

[¶24]  It is true that, although the substantial evidence standard is deferential, "[f]act-finders must rely on evidence, not speculation, in fact-finding, and we must vacate decisions where fact-finding was unsupported by evidence." *Hannum v. Bd. of Env't Prot.*, 2003 ME 123, ¶ 15 n.6, 832 A.2d 765. Here, however, the Board did not rely merely on speculation.  Residents commented, based on their own personal knowledge, that there were blind spots on Meadow Pond Road and that it was dangerous to exit Meadow Pond Road onto the adjoining street.  Residents also commented that children often rode bikes and pedestrians walked in the street.  This was competent evidence upon which the Board could find that limiting access on Meadow Pond Road to avoid additional traffic in Meadow Pond Estates was necessary for safety purposes.  *See Lentine v. Town of St. George*, 599 A.2d 76, 77, 80 (Me. 1991) (holding that the denial of an application to build a wharf was supported by substantial evidence where the denial was based on the statements and articulated concerns of neighbors).  Mick Land bore the burden of proof, and the Board was not bound to accept any particular piece of evidence. *See Adelman v. Town of Baldwin*, 2000 ME 91, ¶ 14, 750 A.2d 577.  The Board also conducted a site walk, and Board members were free to evaluate the evidence in light of their own personal observations.  *See id.* ¶ 11; *cf. Dionne v.*

*LeClerc*, 2006 ME 34, ¶ 15, 896 A.2d 923 (stating that the factfinder is not required to accept even undisputed evidence, whether from experts or lay witnesses).[4]

## C. The Board's decision to impose Condition 6 was not otherwise arbitrary or capricious.

[¶25] Mick Land asks us to vacate the Board's decision on multiple other grounds: because Condition 6 will result in Meadow Pond Estates being functionally disconnected from Samville, which, according to Mick Land, "disregards sound planning principles and violates established subdivision standards"; because the connection between Meadow Pond Estates and Samville was anticipated when Meadow Pond Estates was constructed;[5] because the Board allegedly misconstrued the scope of its review to include town-wide, legislative concerns; and because the Board's imposition of

---

[4] Mick Land's traffic studies focused on safety from the perspective of motor vehicles. As the Board explained, however, "[w]hile the materials received do ensure safe motor vehicle passage, the shape and resulting vehicle speeds do not provide assurances to pedestrian and bicycle traffic without mitigation." Section 121-12(E) requires proof that the subdivision "will not cause unreasonable highway or public road congestion or unsafe conditions with respect to use of the highways or public roads, existing or proposed." Unsafe conditions can refer to lack of safety with respect to pedestrians and bicycle traffic, as well as motor vehicles.

[5] As to Mick Land's argument that the use of Meadow Pond Road as an access point was previously approved by the Board during the development of Meadow Pond Estates, Mick Land has not articulated any reliance interest or argument for why the Board should be estopped from taking a contrary position. *See Tarason v. Town of South Berwick*, 2005 ME 30, ¶ 15, 868 A.2d 230 (stating that equitable estoppel requires the plaintiff to establish that "(1) the statements or conduct of the [government entity] induced him to act; (2) the reliance was detrimental; and (3) his reliance was reasonable").

14

Condition 6 fundamentally redesigned Samville as proposed by Mick Land.[6]

These arguments boil down to whether the Board acted arbitrarily and

capriciously. We hold that it did not.[7]

[¶26] "The arbitrary-and-capricious standard is high: we will not find

that [the Board] has acted arbitrarily or capriciously unless its action is willful

and unreasoning and without consideration of facts or circumstances." *Gordon*

*v. Me. Comm'n on Pub. Def. Servs.*, 2024 ME 59, ¶ 11, 320 A.3d 449 (quotation

marks omitted). Although Mick Land's arguments have some force, they are

ultimately requests that we weigh the evidence differently, which is not our

role. *See Friends of Lamoine v. Town of Lamoine*, 2020 ME 70, ¶ 21, 234 A.3d

214 ("Regarding the Planning Board's ability to determine credibility and to

weigh evidence, we will not substitute our judgment for that of the Planning

Board.")

---

[6] As support for some of these arguments as well as the arguments addressed above, Mick Land relies on statements made by individual Board members at Board meetings. For example, to support its contention that "the Planning Board decision was based on appeasement of the homeowners and not on verifiable safety concerns," Mick Land cites to the statements of individual Board members. "But '[the Board's decisions] should be reviewed based upon what it accomplishe[d] and the [Board's] stated justifications,' not a review of the [Board's] deliberations." *Narowetz v. Bd. of Dental Prac.*, 2021 ME 46, ¶ 20 n.8, 259 A.3d 771 (quoting *Kan. State Network, Inc. v. FCC*, 720 F.2d 185, 191 (D.C. Cir. 1983)); *see also Murray v. City of Portland*, 2023 ME 57, ¶ 17, 301 A.3d 777 ("We also cannot treat the comments that individual Planning Board members made during the hearing as factual findings of the whole Planning Board.")

[7] As to Mick Land's argument that the Board "redesign[ed]" its project, when a developer concludes that a condition imposed by the administrative decisionmaker is unacceptable, the developer may choose not to proceed with the project.

The entry is:

Judgment affirmed.

---

Sandra Guay, Esq., and Michael J. Skolnick, Esq. (orally), Archipelago, Portland, for appellant Mick Land Development, Inc.

Philip R. Saucier, Esq. (orally), and Lisa Prosienski, Esq., Bernstein Shur, Portland, for appellee Town of South Berwick

York County Superior Court docket numbers AP-2024-5 and AP-2024-25
FOR CLERK REFERENCE ONLY