MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2015 ME 151
Docket:        Yor-14-527
Argued:        September 18, 2015
Decided:       November 24, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
               HUMPHREY, JJ.

THERESA DESFOSSES

v.

CITY OF SACO et al.

GORMAN, J.

[¶1] Theresa Desfosses appeals from a decision of the Superior Court (York County, *Fritzsche, J.*) affirming, pursuant to M.R. Civ. P. 80B, the decisions of the City of Saco Planning Board and Zoning Board of Appeals (ZBA) on Desfosses's challenges to three City decisions issued in connection with the construction of a car dealership by WWS Properties, LLC. Desfosses challenges the Planning Board's and the ZBA's conclusions that each lacked jurisdiction to review the City Planner's grant of an amendment to WWS's approved site plan. She also challenges the ZBA's determination that it did not have jurisdiction to consider her appeal of the certificate of occupancy issued to WWS. We vacate the judgment.

## I. BACKGROUND

[¶2]   The parties do not dispute the relevant procedural facts.   On June 25, 2013, WWS obtained site plan approval from the Planning Board to construct a large building and accompanying parking lots on a parcel of property on Route One in Saco, where WWS planned to operate a car dealership.   Among the conditions of the approval was the following: "No deviations from the approved plans are permitted without prior approval from the Planning Board for major changes, and from the City Planner for minor changes.   The determination of major or minor shall be made by the City Planner."   *See* Saco, Me., Zoning Ordinance § 1107 (Feb. 17, 2004) (authorizing the imposition of conditions of approval in a site plan).   Another condition, Condition #11, stated as follows:

> The June 20, 2013 Deluca Hoffman comments shall be addressed to the satisfaction of City staff and of Joe Laverriere, P.E.   *Further, the applicant shall be responsible for addressing to the satisfaction of City staff the potential liability/safety issue that exists along the southwesterly side of the site due to the removal of ledge by a previous owner of the property, prior to the issuance of an occupancy permit for the new building.*

(Emphasis added.)   "Deluca Hoffman comments" referred to the opinion of the City's consulting engineers, and specifically senior engineer Joseph Laverriere, as stated in his letter to the City dated June 20, 2013:

> Our office remains concerned with the steep cut slopes along the southwesterly side of the site and potential liability/safety issue to the applicant and abutting landowner.   It appears the previous excavation

work encroached onto adjacent properties without the approval of the abutting landowner. Our office is uncertain as to how to remedy this situation; however, one solution is to create a safe condition on the applicant property and restore the adjacent property to [its] previous condition. Our office would suggest this issue be reviewed by the City's Code Enforcement Office.

[¶3] Desfosses owns the property abutting WWS's that is discussed in this comment. She received notice of the initial site plan hearings, but did not object to, appeal from, or otherwise participate in the initial site plan proceedings before the City.

[¶4] Less than three months after receiving its site plan approval, WWS requested and obtained approval from the City Planner for a "minor change" to its site plan, providing for the installation of a four-foot-tall freestanding retaining wall with an embedded eight-foot-tall fence atop it along its and Desfosses's common boundary. Desfosses was given no notice of WWS's proposed amendment to its site plan approval or the City Planner's apparent grant of that amendment.[1]

[¶5] Desfosses appealed the City Planner's approval of the site plan amendment to both the Planning Board and the ZBA. After a hearing, the

---

[1] The City Planner issued no formal decision; the approval of the amendment is referred to only in emails between the City Planner and WWS's engineer. Further, in its minutes for the hearing on Desfosses's later appeal, the Planning Board explained its failure to notify Desfosses of WWS's requested site plan amendment by stating, "At some point abutters must assume responsibility for staying informed."

4

Planning Board determined that it did not have jurisdiction to consider the appeal.[2]

Desfosses appealed this decision of the Planning Board to the ZBA as well. In February of 2014, after a hearing, the ZBA determined that it also had no jurisdiction to hear either Desfosses's direct appeal of the site plan amendment approval or her appeal from the Planning Board's determination that it had no jurisdiction over the site plan amendment.[3]

[¶6]   Just over a month after the ZBA's decision, the City's Code Enforcement Officer (CEO) issued WWS a certificate of occupancy. Desfosses appealed the grant of the certificate of occupancy to the ZBA, which, after a hearing held on May 5, 2014, determined that it lacked jurisdiction to hear that appeal as well.

[¶7]   Between December of 2013 and June of 2014, Desfosses filed three appeals—later consolidated—in the Superior Court pursuant to M.R. Civ. P. 80B in which she challenged (1) the Planning Board's decision determining that it lacked jurisdiction to consider the City Planner's site plan amendment, (2) the ZBA's determination that it lacked original jurisdiction to consider the City Planner's site plan amendment and appellate jurisdiction to consider the appeal

---

[2]  The Planning Board's decision was contrary to the advice of the City's attorney, Natalie Burns, who had advised the Planning Board to conduct a de novo hearing on the merits of Desfosses's appeal.

[3]  Although the ZBA noted that "the Zoning Ordinance indirectly infers that the appeal is within the jurisdiction of the Planning Board," it did not remand the matter to the Planning Board.

from the Planning Board's decision as to the site plan amendment, and (3) the ZBA's determination that it lacked appellate jurisdiction over the CEO's issuance of the certificate of occupancy. The Superior Court affirmed all three decisions after concluding, "Nowhere in the Saco Zoning Ordinance has the City of Saco specified that these precise subject matters can be appealed." Desfosses timely appeals from the court's denial of her motion to reconsider.

## II. DISCUSSION

[¶8] Desfosses challenges the Planning Board's and the ZBA's determinations that they lacked jurisdiction over her appeals of the City Planner's approval of the site plan amendment, as well as the ZBA's determination that it lacked jurisdiction over her appeal of the CEO's issuance of a certificate of occupancy. We determine the jurisdiction of a municipal board by interpreting de novo any municipal, statutory, and constitutional provisions relevant to the inquiry. *Wister v. Town of Mt. Desert*, 2009 ME 66, ¶ 17, 974 A.2d 903; *Sanborn v. Town of Sebago*, 2007 ME 60, ¶ 6, 924 A.2d 1061. We first evaluate the plain language of the City's ordinance provisions in light of the "entire [ordinance] scheme to achieve a harmonious result." *Wister*, 2009 ME 66, ¶ 17, 974 A.2d 903. "[I]f the meaning of the statute or ordinance is clear, we need not look beyond the words themselves" to interpret the provision according to that plain meaning. *Id*. In doing so, we avoid any interpretation that creates absurd or illogical results.

6

*Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 21, 107 A.3d 621. We also interpret all provisions in a manner that avoids any "danger of unconstitutionality." *Wister*, 2009 ME 66, ¶ 21, 974 A.2d 903.

A.    Site Plans

    1.    Site Plan Approval and Amendment

[¶9]  We first consider Desfosses's argument regarding her right to appeal the City Planner's approval of WWS's site plan amendment. The Ordinance generally requires that parties seeking "commercial, industrial, institutional and multifamily residential developments" of a certain scale must first obtain site plan approval. Saco, Me., Zoning Ordinance § 1101 (Feb. 17, 2004); *see* Saco, Me., Zoning Ordinance §§ 1102, 1103(1), 1106 (Feb. 17, 2004). The Ordinance further distinguishes between major site plans and minor site plans; although major site plans must be approved by the Planning Board, minor site plans can be approved by the City Planner alone.[4]  Saco, Me., Zoning Ordinance §§ 1103(1), (7) (Feb. 17, 2004). There is no dispute that WWS initially obtained site plan approval for its major plan from the Planning Board.

[¶10]    Once a site plan has been approved, the Ordinance allows amendments to the approved plan depending on whether the project involves a

---

[4]  The Ordinance defines minor site plans as, inter alia, those involving structures of less than 6,000 square feet. Saco, Me., Zoning Ordinance § 1103(7) (Feb. 17, 2004).

major or minor site plan and whether the proposed change is a major or minor amendment.[5] One provision of the Ordinance requires that "[a]ny changes in the plan after approval must be approved by the Planning Board, or in the case of a minor site plan, the City Planner. Minor changes during construction can be approved by the City Planner." Saco, Me., Zoning Ordinance § 1109 (Feb. 17, 2004). In a similar, but not identical, provision entitled "SITE LOCATION OF DEVELOPMENT AMENDMENT," the Ordinance provides: "Once approved and signed by the Planning Board, no changes may be made to approved plans, without an amended approval from the Planning Board in the case of a major amendment, or from the City Planner in the case of a minor amendment." Saco, Me., Zoning Ordinance § 1103(8) (Feb. 17, 2004).

[¶11] Sections 1103(8) and 1109 do not otherwise explain the scope of their application, and site location of development amendments are not distinguished from site plan approvals anywhere else in the Ordinance. When read together, however, sections 1103 and 1109 provide that the Planning Board decides major amendments to major site plans and the City Planner decides minor amendments to

---

[5] Examples of minor amendments include "changes in the record owner, altering phases of development, the addition of accessory structures of less than two thousand . . . s.f. each, . . . the addition of minor site features, such as lighting . . . , and changes in construction details necessitated by changing circumstances found during construction." Saco, Me., Zoning Ordinance § 1103(8) (Feb. 17, 2004). The determination of whether a proposed amendment is a minor or major amendment also rests with the City Planner: "The City Planner will have the authority to refer any changes to the [Planning] Board if it is determined to be necessary." Saco, Me., Zoning Ordinance § 1103(8).

8

both major and minor site plans, as well as major amendments to minor site plans.[6]

Here, the City Planner approved WWS's request to construct the retaining wall and

fence as a minor amendment to its major site plan.

2. Site Plan Appeals

[¶12] Unfortunately, the provisions of the Ordinance that purport to explain

the appellate jurisdiction of the City's Planning Board present an imbroglio of

confusion and contradiction.[7]

[¶13] The Ordinance does not set out the jurisdiction and authority of the

Planning Board in any one provision or set of provisions. Neither do any of the

Ordinance sections regarding site plans provide a picture of clarity on the question

of appeals. Of the two provisions that discuss site plan amendments in particular,

section 1109 contains no mention of any right of appeal and section 1103 presents,

at best, a procedure rife with glaring holes.

[¶14] Specifically, section 1103(7) discusses the City Planner's authority to

approve minor site plans, and allows appeals of City Planner decisions on minor

___

[6] In approving WWS's initial site plan, the Planning Board also required that it approve major amendments to the site plan, and that the City Planner approve minor amendments to the site plan, and vested with the City Planner the determination of whether a change was major or minor. *See Fitanides v. City of Saco*, 2015 ME 32, ¶¶ 14-15, 113 A.3d 1088 (holding that the City may delegate decision-making authority to the City Planner with regard to minor amendments to conditional use plans).

[7] The Ordinance provisions regarding the nature and scope of the ZBA's appellate jurisdiction are similarly obscured by their inconsistent terminology, puzzling section headings, unnecessary duplication of procedural requirements, and various organizational deficiencies. We could locate no provision that suggests that the ZBA has jurisdiction over site plan decisions or City Planner decisions of any type. *See* Saco, Me., Zoning Ordinance §§ 1003-1 to 1003-6, 1004-1 to 1004-8 (Feb. 17, 2004).

site plans made by the applicants for those site plans to go to the Planning Board,[8] but it makes no mention of site plan amendments or appeals of site plan amendments. Saco, Me., Zoning Ordinance § 1103(7) (Feb. 17, 2004) ("If *the applicant* is not satisfied with the determination of the City Planner, *the applicant* shall be permitted to have the entire application reviewed by the Planning Board." (emphases added)). In another provision, the Ordinance reiterates that all "[a]ppeals of decisions on minor site plans shall be made to the Planning Board." Saco, Me., Zoning Ordinance § 1114 (Feb. 17, 2004). To the extent either section 1103(7) or section 1114 is read to apply to appeals of site plan amendments, however, both mention only minor site plans, and neither addresses decisions on minor amendments to major site plans, as is at issue here. Furthermore, section 1103(7) mentions only those appeals brought by *the applicant*, and does not discuss appeals brought by any party other than the applicant.

[¶15] Section 1103(8) does specifically refer to minor amendments granted by the City Planner, and does provide an avenue for review by the Planning Board of the City Planner's decision on a minor amendment—"If *the applicant* is not satisfied with the determination of the City Planner, *the applicant* shall be permitted to have the entire application reviewed by the Planning Board, if such a

---

[8] The Ordinance appears to place no time limitation on appeals by applicants who are "not satisfied with the determination of the City Planner" concerning minor site plans. Saco, Me., Zoning Ordinance § 1103(7).

request is made within thirty (30) days of the City Planner's determination." Saco, Me., Zoning Ordinance § 1103(8) (emphases added). As is the case with section 1103(7), section 1103(8) of the Ordinance expressly provides an opportunity for appeal or review only by request of the applicant, and not by request of an abutter like Desfosses.

[¶16]  Notwithstanding these problematic aspects of the Ordinance, we must interpret it to avoid "absurd, illogical, unreasonable, inconsistent, or anomalous results if an alternative interpretation avoids such results." *Dickau*, 2014 ME 158, ¶ 21, 107 A.3d 621.  To interpret section 1103(8) to provide *the applicant* a right of appeal of a City Planner's determination on a site plan amendment to the Planning Board, but to provide no such appeal to a *nonapplicant* challenging the same decision would be to condone precisely the type of absurd result we are charged with avoiding.  Similarly, to interpret sections 1103(7) and 1114 to allow appeals of all City Planner decisions on minor site plans to the Planning Board, but not allow appeals of City Planner decisions on minor amendments to major site plans would create an additional absurd result.

[¶17]  To avoid these absurdities, we therefore interpret "applicant" in sections 1103(7) and 1103(8) to include nonapplicants alike, and we interpret "minor site plan[s]" in sections 1103(7) and 1114 to include minor amendments to

major site plans. In this way, all appeals of the City Planner's decisions on site plans and site plan amendments may be taken to the Planning Board.[9]

[¶18] Other aspects of the City's Ordinance support this conclusion. *See Dickau*, 2014 ME 158, ¶ 22, 107 A.3d 621 (evaluating the entire statutory scheme—including its "design, structure, and purpose as well as [its] aggregate language"—as a component of a plain language interpretation (quotation marks omitted)). The fact that it is the Planning Board that decides site plan approvals and amendments for major site plans indicates that the Planning Board was meant to take the primary role in considering site plan issues. *See* Saco, Me., Zoning Ordinance § 1103(1) ("No building permit, plumbing permit, or certificate of occupancy shall be issued by the Code Enforcement Officer . . . for any use or development within the scope of this Article until a site plan of development has been approved and signed by the Planning Board . . . ."); Saco, Me., Zoning Ordinance § 1103(8) ("Once approved and signed by the Planning Board, no

---

[9] WWS encourages us to interpret the absence of any Ordinance provision expressly permitting an appeal of a City Planner decision on a minor amendment to a major site plan by a nonapplicant to mean that no such appeal is allowed. Even if we were to conclude that the Planning Board lacked jurisdiction over such appeals, we would nevertheless reject WWS's argument based on our extensive body of law interpreting 30-A M.R.S. § 4353(1) (2014) to provide for the ZBA's appellate jurisdiction over such municipal enforcement decisions by default. *See Wister v. Town of Mt. Desert*, 2009 ME 66, ¶¶ 15-26, 974 A.2d 903; *Sanborn v. Town of Sebago*, 2007 ME 60, ¶¶ 7-11, 924 A.2d 1061; *Hodsdon v. Town of Hermon*, 2000 ME 181, ¶¶ 3-6, 760 A.2d 221; *Freeman v. Town of Southport*, 568 A.2d 826, 827-29 (Me. 1990); *Cushing v. Smith*, 457 A.2d 816, 819-21 (Me. 1983); *see also Fitanides v. City of Saco*, 2015 ME 32, ¶ 15 n.4, 113 A.3d 1088 (suggesting that an appeal of a City Planner's decision on a conditional use permit would have to go to the ZBA in the absence of an express Ordinance provision requiring it to go elsewhere).

changes may be made to approved plans, without an amended approval from the Planning Board in the case of a major amendment . . . ."); *see also* Saco, Me., Zoning Ordinance § 1109 ("Any changes in the [site] plan after approval must be approved by the Planning Board . . . .").

[¶19]  Moreover, the fact that sections 1103(7), 1103(8), and 1114 already expressly require that certain appeals of City Planner site plan decisions go to the Planning Board can only be interpreted to reflect a municipal determination that it is the Planning Board that has the expertise to evaluate City Planner decisions as to site plans and site plan amendments.  *See* Saco, Me., Zoning Ordinance §§ 1103(7), (8), 1114.  Finally, the Ordinance's provision that all Planning Board decisions may be appealed directly to the Superior Court demonstrates that the ZBA was *not* intended to have any role in the site plan approval or amendment process, whether undertaken by the Planning Board or the City Planner.  *See* Saco, Me., Zoning Ordinance §§ 1003-6(1)(b), 1114 (Feb. 17, 2004).

[¶20]  In sum, given the current state of the City's Ordinance, we interpret the Ordinance to provide equally that any party with standing[10]—whether applicant

---

[10]  WWS offers no support for its contention that because Desfosses failed to oppose WWS's initial site plan approval proceedings, she lacked standing to challenge the later site plan amendment. Desfosses, as an abutting landowner, has standing as a general matter to challenge the land use approvals of her neighbor, and has a particular interest in WWS's construction of a retaining wall and fence along their common boundary. *See Wister*, 2009 ME 66, ¶¶ 12-13, 974 A.2d 903.  Although Desfosses did not participate in the initial site plan approval proceedings, she is not challenging the City's decision in those initial proceedings.  Instead, she challenges only the City Planner's amendment to that approval. *Cf. Friends of Lincoln Lakes v. Town of Lincoln*, 2010 ME 78, ¶¶ 11-15, 2 A.3d 284.

or nonapplicant—may timely appeal a City Planner's decision on a site plan amendment—whether a major or minor site plan—to the City's Planning Board.[11] By this interpretation, Desfosses's appeal of the City Planner's approval of the site plan amendment was properly before the Planning Board, and the Planning Board erred in determining that it lacked jurisdiction.[12] We therefore vacate the judgment of the Superior Court and remand the site plan amendment appeal to the Superior Court with instructions to remand the matter to the Planning Board for consideration of Desfosses's appeal on its merits.

---

Nor are we persuaded by WWS's argument that Desfosses waived her due process arguments. *Cf. Antler's Inn & Rest., LLC v. Dep't of Pub. Safety*, 2012 ME 143, ¶ 9, 60 A.3d 1248.

[11]   The Planning Board conducts a de novo review of a City Planner decision on a site plan amendment.  Saco, Me., Zoning Ordinance § 1114 (Feb. 17, 2004) ("This appeal may include new evidence and testimony.").  Any subsequent appeal of the Planning Board's decision is taken to the Superior Court pursuant to Saco, Me., Zoning Ordinance § 1003-6(1)(b) (Feb. 17, 2004).

[12]   Further, although the City's actions in failing to provide Desfosses with notice of the requested amendment and the approval of the amendment are not before us in this appeal, we reject WWS's unsupportable contention that "[t]here is no way that permission to construct a retaining wall *to protect Desfosses's property* can be viewed as a governmental deprivation of her property" in the context of a due process analysis.  *Cf.* U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Kirkpatrick v. City of Bangor*, 1999 ME 73, ¶ 13 & n.6, 728 A.2d 1268.  On the contrary, Desfosses enjoys a protected property interest in WWS's ability to construct a retaining wall and fence along their common boundary, and has a right to the notice and opportunity to be heard in all proceedings related to that interest that are the hallmarks of due process.  *See, e.g.*, *Duffy v. Town of Berwick*, 2013 ME 105, ¶ 15, 82 A.3d 148 ("Both an applicant and members of the public who oppose a project are entitled under the Due Process Clause of the United States and Maine Constitutions to a fair and unbiased hearing." (alterations omitted) (quotation marks omitted)); *Wister*, 2009 ME 66, ¶ 21, 974 A.2d 903; *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 8 n.4, 757 A.2d 773; *Kirkpatrick*, 1999 ME 73, ¶ 15, 728 A.2d 1268; *see also* Saco, Me., Zoning Ordinance § 1101 (Feb. 17, 2004) (recognizing among its purposes the goal of addressing "the value and rights of adjoining properties").

14

B.    Certificate of Occupancy

[¶21]   We turn to Desfosses's contention regarding her right to appeal the CEO's issuance of a certificate of occupancy.  Certificates of occupancy are issued pursuant to Saco, Me., Zoning Ordinance § 1203-1 (Feb. 17, 2004), which states: "No new structure shall be occupied or used . . . prior to the issuance of an occupancy permit by the Code Enforcement Officer.  The Code Enforcement Officer shall not issue an occupancy permit unless the new structure or proposed use is in conformance with the Zoning Ordinance."  On appeals, the Ordinance instructs the ZBA "[t]o affirm, modify, or set aside the action of the Building Inspector in issuing or denying building permits or certificates of occupancy when it is alleged that the action is based on an erroneous interpretation of this Ordinance."  Saco, Me., Zoning Ordinance § 1003-1 (Feb. 17, 2004).  Thus, section 1003-1 apparently limits the ZBA's appellate jurisdiction over challenges to certificates of occupancy to those instances in which it is the "Building Inspector" who issued the certificate of occupancy, and only "when it is alleged that the action is based on an erroneous interpretation" of the Ordinance.  Saco, Me., Zoning Ordinance § 1003-1.  Another provision of the Ordinance, in contrast, more broadly allows that "[a]n administrative or variance appeal may be taken to the Board of Appeals by an aggrieved party from *any decision* of the *Code*

*Enforcement Officer*."[13]     Saco, Me., Zoning Ordinance § 1003-6(1)(a)(1) (Feb. 17, 2004) (emphases added).

[¶22]  These provisions, like those regarding site plan amendments, are not models of clarity.  Although section 1003-1 refers to certificates of occupancy as issued by the "Building Inspector," section 1203-1, which provides the very requirement of obtaining a certificate of occupancy, states that those certificates must be obtained from the CEO.  Saco, Me., Zoning Ordinance §§ 1003-1, 1203-1.  Section 1003-6(1)(a)(1) likewise refers to decisions of the CEO, but contains no mention of the "Building Inspector."  Given that the Ordinance requires that the CEO issues certificates of occupancy, given that the term "Building Inspector" suggests a role identical to that of the CEO, and given that the Ordinance does not otherwise distinguish between a Building Inspector and a CEO, we interpret section 1003-1 to regard appeals of certificates of occupancy issued by the City's CEO.

[¶23]  In any event, WWS argues that because Desfosses's challenge to the certificate of occupancy is based on whether the construction of the retaining wall and fence complies with the terms of the site plan, it technically does not regard "an erroneous interpretation of [the] Ordinance," as is required for appeals of

---

[13]  Section 1003-6 is inexplicably titled, "SHORELAND VARIANCES," but otherwise contains no discussion of either shoreland or variances.  Saco, Me., Zoning Ordinance § 1003-6 (Feb. 17, 2004).

16

certificates of occupancy pursuant to section 1003-1, and therefore that section 1003-1 provides no authority for Desfosses's particular appeal of WWS's certificate of occupancy. WWS's reading of section 1003-1 is unnecessarily narrow. A certificate of occupancy cannot be issued unless the new structure conforms to the Zoning Ordinance. Saco, Me., Zoning Ordinance § 1203-1(A). Among the terms of the Zoning Ordinance are those that set out the criteria for obtaining site plan approval, require an applicant to obtain site plan approval, and allow the imposition of conditions for site plan approval. Saco, Me., Zoning Ordinance §§ 1106, 1107. The issuance of a certificate of occupancy when the terms of that site plan approval—including its conditions—are not fulfilled is necessarily a violation of the very portions of the Ordinance that require site plan approval and a certificate of occupancy. An evaluation of whether the terms of the site plan approval and its conditions were met is dependent on the CEO's interpretation of the Ordinance provisions pursuant to which that approval was granted and those conditions imposed. Therefore, we interpret the plain language of section 1003-1 to provide that the ZBA had jurisdiction to consider Desfosses's appeal of the issuance of a certificate of occupancy. For this reason, we conclude that the ZBA erred in refusing to exercise that jurisdiction,[14] and we remand the

---

[14] Even if the plain language of the Ordinance provided for no such right of appeal, we would again be bound by our interpretation of 30-A M.R.S. § 4353(1) to require that certificates of occupancy may be appealed to the ZBA in any event. Notwithstanding WWS's attempts to argue that no such appeal is

matter to the Superior Court with instructions to remand the certificate of occupancy appeal to the ZBA for consideration of the appeal on its merits.

The entry is:

> Judgment of the Superior Court vacated and remanded with instructions to enter an order (1) remanding Desfosses's appeal of the approval of the site plan amendment to the City of Saco Planning Board for consideration on the merits, and (2) remanding Desfosses's appeal of the issuance of the certificate of occupancy to the City of Saco Zoning Board of Appeals for consideration on the merits.

---

authorized, we have held that "the issuance or denial of a certificate of occupancy is a decision subject to judicial review." *Salisbury v. Town of Bar Harbor*, 2002 ME 13, ¶ 13, 788 A.2d 598. The limitation we have placed on appeals of certificates of occupancy is that such appeals "may not . . . substitute for an appeal of the underlying permit." *Id*. ¶ 14. We explained:

> If the permittee has complied with the terms of a valid permit, an abutter may not challenge the issuance of the certificate of occupancy based on a defect in the permit. If, however, the permittee has meaningfully exceeded the authority contained in the permit, or otherwise violated conditions of the permit, the issuance of the certificate of occupancy may be challenged.

*Id*. Desfosses is not attempting to appeal the certificate of occupancy in lieu of appealing the initial site plan review; she does not object, and has never objected, to the terms of the initial site plan approval, including Condition #11. Although she does challenge the site plan amendment in a separate portion of the matter, her appeal of the certificate of occupancy regards whether WWS *actually complied* with all of the conditions of the site plan approval necessary to obtain the certificate of occupancy, and more particularly, whether Condition #11 was ever satisfied.

**On the briefs:**

C. Alan Beagle, Esq., Beagle, Steeves & Ridge, LLC, Portland, for appellant Theresa Desfosses

Timothy S. Murphy, Esq., Prescott Jamieson Murphy Law Group, LLC, Saco, for appellee City of Saco

David M. Hirshon, Esq., and Marshall J. Tinkle, Esq., Hirshon Law Group, PC, Portland, for appellee WWS Properties, LLC

**At oral argument:**

C. Alan Beagle, Esq., for appellant Theresa Desfosses

Marshall J. Tinkle, Esq, for appellee WWS Properties, LLC

York County Superior Court docket numbers AP-2013-45, AP-2014-09, AP-2014-17
FOR CLERK REFERENCE ONLY