288MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 89
Docket:       Kno-15-288
Submitted
 On Briefs:   April 21, 2016
Decided:      June 7, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, <u>MEAD</u>, GORMAN, HJELM, and HUMPHREY, JJ.


OSPREY FAMILY TRUST

v.

TOWN OF OWLS HEAD et al.


MEAD, J.

[¶1]  The Osprey Family Trust appeals, pursuant to M.R. Civ. P. 80B, from a judgment of the Superior Court (Knox County, *Billings, J.*) affirming a decision of the Town of Owls Head Board of Appeals (BOA).  The BOA's decision overruled the decision of the Town's Planning Board to grant the Trust a permit to remove an existing structure in the shoreland zone and replace it with a new structure that included an addition.  We agree with the court's finding that the Planning Board was required to initially consider the new structure's compliance with the Town's Shoreland Zoning Ordinance (SZO) absent the proposed addition; we conclude also that the Planning Board applied the wrong section of the SZO in considering the Trust's permit application.  For that reason, we vacate the judgment and

remand with instructions that the court order the Planning Board to reconsider the application, applying the proper SZO provision.

## I. BACKGROUND

[¶2] The facts are drawn from the administrative record before the Planning Board. *See* M.R. Civ. P. 80B(f). All parties agree that the Planning Board rendered "the operative decision of the municipality" to be reviewed on appeal because the SZO authorizes the BOA to act only in an appellate capacity, which it did in this case. *See Fitanides v. City of Saco*, 2015 ME 32, ¶ 8, 113 A.3d 1088 (quotation marks omitted); Owls Head, Me., Zoning Ordinance § 1.6(B)(2) (March 4, 2013); Owls Head, Me., Shoreland Zoning Ordinance § 16(H)(1) (March 4, 2013).

[¶3] On March 31, 2013, Douglas Johnson, as trustee of the Osprey Family Trust (hereinafter Johnson), filed an application for a building permit concerning his shorefront property in Owls Head. Johnson sought to replace a dilapidated minesweeper deckhouse that had been placed on the property in the 1950s and used as a cottage with a new, larger single-family residence. The existing structure is located partly within the SZO's seventy-five-foot setback zone from the Atlantic Ocean. *See* Owls Head, Me., Shoreland Zoning Ordinance § 15(B) (March 4, 2013). In addition to being bounded by the ocean, the rear of Johnson's property contains a wetland of special significance that would necessitate a Maine

Department of Environmental Protection permit before being used as a building site. 06-096 C.M.R. ch. 310, § 4, amended by order 2009-32 (effective Jan. 26, 2009). Johnson proposed to replace the existing structure with one that would still be located partly within the seventy-five-foot setback zone, but farther back from the ocean than the old structure, along with an addition lying completely outside of the seventy-five-foot setback zone and not encroaching on the wetland.

[¶4] The Planning Board took up Johnson's proposal on several occasions between April 2013 and March 19, 2014, when it made findings of fact and unanimously approved Johnson's plan. The Planning Board's findings of fact included a finding that

> [u]nder Section 12 of the Town's Shoreland Zoning Ordinance, this is a nonconforming structure and it may be re-located, further away from the ocean, but not into the wetland to the rear, to the greatest extent practical in the opinion of the Planning Board. . . . [T]he Planning Board believes the "compromise" location of the proposed new building—15' back from its original proposed location . . . —best meets the applicable SZO standard, i.e., the proper balancing of the competing environmental interests.

[¶5] The referenced SZO provision states, in part, that "[a] nonconforming structure may be relocated within the boundaries of the parcel on which the structure is located provided that the site of relocation conforms to all setback requirements *to the greatest practical extent as determined by the Planning*

4

*Board*." Owls Head, Me., Shoreland Zoning Ordinance § 12(C)(2) (March 4, 2013) (emphasis added).

[¶6] On April 14, 2014, Owls Head residents Jill Delaney and Claire Perry appealed the Planning Board's decision to the BOA, contending that the Planning Board erred in finding that Johnson's project conformed with setback requirements "to the greatest practical extent." The BOA met on May 6, 2014, and decided that (1) "the Planning Board was in error in their decision and [] the existing structure is not being relocated to the greatest extent practical," and (2) "the decision of the Planning Board was clearly contrary to the Shoreland Zoning Ordinance."

[¶7] Johnson appealed to the Superior Court pursuant to M.R. Civ. P. 80B. The court entered an order affirming the BOA's decision after concluding that

> it was certainly reasonable and within the Planning Board's discretion for the Board to take into consideration the location of the wetland and drainage swale and to decide that it was not practical to require that the building be relocated into the wetland or swale. However, it was not reasonable for the Planning Board to take into consideration the proposed addition before determining whether the relocation of the existing structure "conforms to all setback requirement[s] to the greatest practical extent." The proper analysis would have been to first consider how the existing structure could be relocated on the property to conform . . . and to then consider whether an addition outside of the 75 foot setback area could be constructed. . . . The evidence in the record compels a finding that the existing structure could be relocated further from the ocean without encroaching on the wetland . . . if not for the proposed addition. Therefore, the Planning Board's decision is unsupported by substantial evidence in the record and must be overturned.

[¶8]  Johnson appealed and Delaney cross-appealed.  We have considered the arguments made in the cross-appeal and find them to be unpersuasive. Accordingly, we turn to our review of the Planning Board's decision to grant the permit.  *See Fitanides*, 2015 ME 32, ¶ 8, 113 A.3d 1088.

## II.  DISCUSSION

[¶9]  We review the Planning Board's approval of the permit directly "for error of law, abuse of discretion or findings not supported by substantial evidence in the record."  *Id.* (quotation marks omitted).  In doing so, we interpret Owls Head's ordinances de novo.  *Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 16, 868 A.2d 161.  "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion."  *Id.* (quotation marks omitted).  Although Johnson is the appellant here, Delaney bears the burden of persuasion on appeal because she seeks to vacate the Planning Board's underlying decision.  *Fitanides*, 2015 ME 32, ¶ 8, 113 A.3d 1088.

[¶10]  The Town's ordinances are construed de novo, but

[w]e review factual findings of the Planning Board with deference and may not substitute our own judgment for that of the Board.  The Board's decision is not wrong because the record is inconsistent or a different conclusion could be drawn from it.  Further, a demonstration that no competent evidence supports the local board's findings is required in order to vacate the board's decision. . . . We are bound to uphold the Board's decision unless the evidence before the Board would compel a positive finding for [the appellees].

6

*Gensheimer*, 2005 ME 22, ¶¶ 17-18, 868 A.2d 161 (alteration, citations, and quotation marks omitted).

[¶11]  The Planning Board made four findings of fact, only one of which is at issue here.  In that finding, the Planning Board determined that relocating the proposed structure fifteen feet farther back from the ocean to a site that did not intrude on the wetland struck a proper balance between Johnson's interests and those of the SZO—that is, the relocation conformed to setback requirements not to the greatest theoretical extent, but rather "to the greatest practical extent."  That conclusion represents a mixed question of fact and law.  The real question presented is whether the Planning Board was entitled to make its determination based on the project as proposed by Johnson, which included an addition to the original structure's footprint, or whether, as the Superior Court concluded, the Planning Board was required to consider how the original structure's footprint could be relocated before considering the proposed addition.  We conclude that the Planning Board erred in its interpretation of the Ordinance and that the SZO supports the court's determination.

[¶12]  Different sections of the SZO govern the *relocation* of nonconforming structures, and the *replacement* of such structures.[1]  The Planning Board focused

_____

[1] The SZO defines a "non-conforming structure" as "a structure which does not meet any one or more of the following dimensional requirements; setback . . . but which is allowed solely because it was in

on the relocation provision. It is clear, however, that Johnson was not seeking to relocate the dilapidated deckhouse, but rather to demolish it and replace it with a new structure, plus an addition. When a nonconforming structure is replaced, as opposed to being relocated, then section 12(C)(3) of the SZO is applicable:

> Any non-conforming structure which is located less than the required setback from a water body . . . and which is removed . . . may be reconstructed or replaced provided that a permit is obtained within one year of the date of said . . . removal, and provided that such . . . replacement is in compliance with the water setback requirement to the greatest practical extent as determined by the Planning Board in accordance with the purposes of this Ordinance. . . . *If the total amount of floor area and volume of the original structure can be relocated or reconstructed beyond the required setback area, no portion of the reconstructed or relocated (sic) shall be replaced or constructed at less than the setback requirement for a new structure.*

Owls Head, Me., Shoreland Zoning Ordinance § 12(C)(3) (March 4, 2013) (emphasis added).

[¶13] Although the conclusion reached by the Superior Court—that the Planning Board erred in considering the footprint of the original structure and the new addition as a single whole—was reached after consideration of section 12(C)(2), the court's reasoning is equally applicable to section 12(C)(3).[2] That said, while we agree with the court's legal conclusion, the Planning Board's

---

lawful existence at the time this Ordinance or subsequent amendments took effect." Owls Head, Me., Shoreland Zoning Ordinance § 17 (March 4, 2013).

[2] Section 12(C)(3) requires that new construction take place beyond the setback requirements of the SZO. *See* Owls Head, Me., Shoreland Zoning Ordinance § 12(C)(3) (March 4, 2013).

application of the wrong section of the SZO required the court as a procedural matter to remand the case to the Planning Board for reconsideration of Johnson's application, which may require additional fact-finding. Instead, the court simply denied Johnson's appeal from the BOA's decision, which was also made after incorrectly considering section 12(C)(2). For that reason, we vacate the court's judgment and remand the matter with instructions to remand Johnson's permit application to the Owls Head Planning Board for de novo consideration and application of the applicable section of the Shoreland Zoning Ordinance.

The entry is:

> Judgment vacated. Remanded with instructions that the Superior Court remand the Trust's permit application to the Owls Head Planning Board for de novo consideration consistent with this opinion.

---

**On the briefs:**

Paul L. Gibbons, Esq., The Law Offices of Paul L. Gibbons, LLC, Camden, for appellant Osprey Family Trust

David F. Jenny, Esq., Owls Head, for cross-appellant Jill Delaney

The Town of Owls Head and Claire Perry did not file a brief