MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 27
Docket:      Cum-17-274
Argued:      December 13, 2017
Decided:     February 22, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

FREDERICK OLSON et al.

v.

TOWN OF YARMOUTH et al.

HUMPHREY, J.

[¶1]  Frederick Olson and Leora Rabin appeal from a judgment of the Superior Court (Cumberland County, *Warren, J.*) affirming, pursuant to M.R. Civ. P. 80B, the Town of Yarmouth Planning Board's approval of a site plan application by Portland Cellular Partnership, d/b/a Verizon Wireless (Verizon), to install wireless communication equipment on a tower and site owned by the Yarmouth Water District.  Olson and Rabin argue that Verizon's application did not comply with Yarmouth's Zoning Ordinance because (1) the Yarmouth Water District site was subject to a presumption of unsuitability that Verizon failed to overcome, and (2) Verizon did not present sufficient evidence that it investigated other technically feasible sites.  Because the Board did not err by

2

concluding that Verizon's application complied with the relevant provisions of the Zoning Ordinance, we affirm the judgment.

## I. BACKGROUND

[¶2] In 2001, Sprint Spectrum L.P. (Sprint) submitted a site plan application to the Town of Yarmouth in which it applied to install a wireless communication antenna array on a water tower owned by the Yarmouth Water District and to install equipment cabinets on the ground near the tower. The Planning Board denied the application because it did not meet zoning and site plan ordinance standards. In April 2016, Verizon applied to the Planning Board for a similar use at the same site.

[¶3] At a public meeting on May 25, 2016, the Planning Board reviewed Verizon's plan. The Planning Board and neighboring residents, including Olson and Rabin, questioned the location of the equipment enclosure and the related visual, noise, and health effects on the neighborhood. Olson's property abuts the Yarmouth Water District site, and Rabin resides within 500 feet of the site. Verizon represented that it would examine other sites and look at the gaps in

coverage that led to the selection of this location. The Planning Board did a site walk on June 15, 2016.

[¶4] On July 20, 2016, Verizon submitted its final site plan application to install equipment on the Yarmouth Water District site. Verizon asserted in its application that, by installing the equipment on the Yarmouth Water District site, Verizon would "be able to fill the substantial coverage gap that it now experiences, and provide improved coverage and capacity to residents, businesses, and traffic corridors within sections of Yarmouth that are currently located within deficient service areas of Verizon Wireless'[s] network."

[¶5] The Town of Yarmouth Director of Planning and Development (Director) submitted a report to the Planning Board on September 23, 2016. The Director detailed how Verizon's application complied with individual site plan and zoning standards and concluded that the project conformed to the Town's comprehensive plan and submission requirements. As to the Ordinance's requirement that Verizon investigate other technically feasible sites, he concluded that Verizon had "described [its] site selection process," and the Yarmouth Water District site allows "the antenna to be located on an existing water tower which avoids the need to construct a new tower." The

Director recommended that the Planning Board approve the application if Verizon accepted the conditions that he proposed in his report.

[¶6] The Director's report included the 2001 letter denying Sprint's site plan application and the Planning Board's findings on Sprint's application. The 2001 Planning Board report stated that "[t]he size and configuration of the lot on which the water tower is located and upon which equipment is located is too small in area and too narrow in width and therefore too constrained for 'adverse impacts' of the proposed equipment installation on the ground to be adequately minimized, per [Yarmouth, Me., Zoning Ordinance, art. II(Z)(1)], in the residential context and close proximity to adjacent and nearby residences involved."[1]

[¶7] On September 28, 2016, the Planning Board considered Verizon's final site plan application at a public meeting. The Planning Board asked about alternative sites that Verizon had considered, and a Verizon representative explained that it looked at the gaps in its area of coverage and then looked for sites that could fill the gaps with a minimal impact on the Town. The Verizon

---

[1] The 2001 Planning Board's written findings included a section entitled "Presumption of inability to accommodate similar equipment" that was stricken by hand. Because the record is devoid of evidence concerning the rationale for removing this language and we review the Ordinance's provision creating a presumption of unsuitability de novo, *see Osprey Family Tr. v. Town of Owls Head*, 2016 ME 89, ¶ 9, 141 A.3d 1114, we accord no weight to this section of the Planning Board's findings.

representative told the Planning Board that Verizon's "[g]oal at this site has been to . . . comply with the primary goal of the Town's wireless ordinance, and that is to avoid the need for new towers." Verizon's search revealed that the Yarmouth Water District site was the only appropriate location because other buildings in the area were not tall enough and a Central Maine Power pole would not fill the coverage gap and posed administrative hurdles. The Planning Board unanimously gave conditional approval to Verizon's application after finding that the plan conformed to the Site Plan Review Ordinance. The Planning Board issued a written approval letter on October 7, 2016.

[¶8] On November 8, 2016, Olson and Rabin, who both appeared and commented at the Planning Board meetings, filed a complaint and petition for review of final municipal action pursuant to M.R. Civ. P. 80B in the Superior Court.[2] Verizon intervened in the action. The court affirmed the Planning Board's decision on June 1, 2017.

[¶9] Olson and Rabin filed a timely appeal. *See* M.R. Civ. P. 80B(n); M.R. App. P. 2(b)(3) (Tower 2016).[3]

---

[2] Pursuant to Yarmouth, Me., Site Plan Review Ordinance, art. I(F)(3) (June 2017), site plan decisions of the Planning Board are appealed to the Superior Court in Cumberland County.

[3] This appeal was commenced before September 1, 2017, and therefore the restyled Maine Rules of Appellate Procedure do not apply. *See* M.R. App. P. 1.

## II. DISCUSSION

[¶10]  Olson and Rabin raise two issues on appeal.  First, they argue that the Planning Board erred in its approval of Verizon's site plan application because, pursuant to article II(Z)(4)(a)(3) (Sept. 2016) of the Yarmouth Zoning Ordinance, the Yarmouth Water District site was presumed to be unsuitable and Verizon failed to overcome that presumption.  Second, they contend that there was not substantial evidence in the record to support the Board's finding that Verizon investigated other technically feasible sites, as required by Yarmouth, Me., Zoning Ordinance, art. II(Z)(9)(c) (Sept. 2016).

[¶11]  "We review the Planning Board's approval of the [site plan application] directly for error of law, abuse of discretion or findings not supported by substantial evidence in the record." *Osprey Family Tr. v. Town of Owls Head*, 2016 ME 89, ¶ 9, 141 A.3d 1114 (quotation marks omitted). "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion." *Id.* (quotation marks omitted). "Although interpretation of an ordinance is a question of law, we accord substantial deference to the Planning Board's characterizations and fact-findings as to what meets ordinance standards." *Bizier v. Town of Turner*, 2011 ME 116, ¶ 8, 32 A.3d 1048 (quotation marks omitted).  When interpreting

an ordinance de novo, "we first evaluate the plain meaning of the Ordinance and, if the meaning is clear, [we] need not look beyond the words themselves. We construe the terms of an ordinance reasonably, considering its purposes and structure and to avoid absurd or illogical results." *Fryeburg Tr. v. Town of Fryeburg,* 2016 ME 174, ¶ 5, 151 A.3d 933 (citation omitted) (quotation marks omitted)*.* Olson and Rabin bear the burden of persuasion on appeal because they seek to vacate the Planning Board's decision. *See Bizier*, 2011 ME 116, ¶ 8, 32 A.3d 1048.

A.     Application of the Presumption of Unsuitability

[¶12]  We first consider Olson and Rabin's argument that, pursuant to article II(Z)(4)(a)(3) of the Ordinance, the Planning Board's 2001 denial of Sprint's application to install a wireless communication antenna array and associated equipment cabinets on the Yarmouth Water District site created a rebuttable presumption that the site was unsuitable to accommodate Verizon's proposal.

[¶13]  Article II(Z)(4)(a)(3) states:

> Once the Planning Board has determined that telecommunications equipment proposed by the applicant cannot be accommodated on an existing or approved tower or Alternative Tower Structure, each tower or Alternative Tower Structure so found is presumed unable to accommodate similar equipment that may be proposed in the future unless the Board determines, after

additional information is provided, that new technology or other considerations enables the existing or approved tower or Alternative Tower Structure to accommodate the equipment.

Yarmouth, Me., Zoning Ordinance, art. II(Z)(4)(a)(3).

[¶14]  Olson and Rabin argue that Yarmouth, Me., Zoning Ordinance, art. II(Z)(4) (Sept. 2016)[4] broadly addresses co-location requirements and is

---

[4] Article II(Z)(4) provides:

4.  Co-location requirements

a.  On existing towers:

(1)  Applicants for site plan review for a new wireless communication tower must send written notice by pre-paid first class United States mail to all other such tower and Alternative Tower Structure owners and licensed wireless communication providers in the Town utilizing exi[s]ting towers and Alternative Tower Structures and to owners of such towers and Alternative Tower Structures within a 1 mile search radius of the proposed tower, stating their siting needs and/or colocation capabilities. Evidence that this notice requirement has been fulfilled shall be submitted to the Planning Board and shall include a name and address list, copy of the notice which was sent, and a statement, under oath, that the notices were sent as required. An application for a new tower must include evidence that existing or previously approved towers and Alternative Tower Structures within the Town and search area cannot accommodate the communications equipment (antennas, cables, etc.) planned for the proposed tower. Such evidence would be documentation from a qualified and licensed professional engineer that:

(a.)  Planned necessary equipment would exceed the structural capacity of existing and approved towers and Alternative Tower Structures, considering the existing and planned use of those towers and Alternative Tower Structures, and the existing and approved towers cannot be reinforced to accommodate planned or equivalent equipment at a reasonable cost;

(b.)  Planned equipment will cause electromagnetic frequency interference with other existing or planned equipment for that tower or Alternative Tower Structure, and the interference cannot be prevented at a reasonable cost;

not limited to applicants seeking to construct a new tower. They contend that although article II(Z)(4)(a)(1) applies only to new-tower-construction applicants, article II(Z)(4)(a)(3) applies both to new-tower-construction

---

      (c.)    Existing or approved towers and Alternative Tower Structures do not have space on which planned equipment can be placed so it can function effectively and at least in parity with other similar equipment in place or approved; or

      (d.)    Other documented reasons that make it technically or financially unfeasible to place the equipment planned by the applicant on existing and approved towers and Alternative Tower Structures.

  (2)    Shared use shall be conditioned on the applicant's agreement to pay a reasonable fee and costs of adapting existing facilities to the proposed use.

  (3)    Once the Planning Board has determined that telecommunications equipment proposed by the applicant cannot be accommodated on an existing or approved tower or Alternative Tower Structure, each tower or Alternative Tower Structure so found is presumed unable to accommodate similar equipment that may be proposed in the future unless the Board determines, after additional information is provided, that new technology or other considerations enables the existing or approved tower or Alternative Tower Structure to accommodate the equipment.

  (4)    The Planning Department will maintain a list of existing and approved towers and Alternative Tower Structures, including name and address of owner(s), within the Town of Yarmouth.

b.  Construction of new towers
A proposal to construct a new co-located communication tower taller than the maximum height permitted for a single wireless communication service must include evidence that the tower can structurally support a minimum of three (3) antenna arrays for each anticipated co-locating entity. (See Section II.Z.3.a Tower Height, above.)

Prior to the issuance of any Building permits for a co-located tower in excess of the height of a single user tower, the applicant will submit to the Code Enforcement Officer executed agreements documenting commitments to co-locate from the number of co-locators approved by the Planning Board.

Yarmouth, Me., Zoning Ordinance, art. II(Z)(4) (Sept. 2016).

applicants and to co-location applicants seeking to install similar equipment on an existing structure. Based on this reading of the Ordinance, Olson and Rabin assert that the presumption of unsuitability attaches to a site whenever the Planning Board has determined that the site is unsuitable for co-location. Olson and Rabin contend that the Planning Board's 2001 determination that the Yarmouth Water District site was "too small in area and too narrow in width" to accommodate Sprint's proposal made the site presumptively unsuitable for any later application to install similar equipment at that site, and that Verizon needed to rebut that presumption before its application could be approved.

[¶15] The question to be answered is whether the presumption of unsuitability attaches to a co-location site only when an applicant initially proposes to construct a new tower, or whether it also attaches when the applicant's initial proposal is to co-locate by installing equipment on that site. If the latter, a rebuttable presumption of unsuitability attached to the Yarmouth Water District site after the Planning Board denied Sprint's application in 2001.

[¶16] As is the case with statutes, our single goal in interpreting an ordinance is to give effect to the Town's intent in enacting the ordinance. *See Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 19, 107 A.3d 621. We first determine if the language of the ordinance is plain and unambiguous. *See id.* Our

interpretation of the plain language is guided by "taking into account the subject matter and purposes of the statute, and the consequences of a particular interpretation." *Id.* ¶ 21. We must construe the terms of article II(Z)(4) reasonably, by considering the purposes and structure of the Ordinance to avoid absurd or illogical results. *See Fryeburg Tr.*, 2016 ME 174, ¶ 5, 151 A.3d 933. After examining the entirety of the Ordinance, we conclude that the plain and unambiguous language of the Ordinance makes clear that article II(Z)(4) applies only to new-tower-construction applicants.

[¶17] At the outset, article II(Z) announces that one of the purposes of the Ordinance is to encourage co-location and "[p]ermit the construction of new towers only where all other reasonable opportunities have been exhausted." *See* Yarmouth, Me., Zoning Ordinance, art. II(Z)(1). Accordingly, article II(Z)(4) describes the process that new-tower-construction applicants must use to exhaust their opportunities for co-location before they can obtain Planning Board approval of their new-tower-construction application.

[¶18] No language in article II(Z)(4) states that the provisions apply to co-location applicants. Instead, article II(Z)(4)(a)(1) expressly requires *new-tower-construction applicants* to undertake a search for existing and previously approved co-location sites that can accommodate the applicant's

proposed communications equipment; article II(Z)(4)(a)(2) requires payment of fees if a co-location site is found in that search; and article II(Z)(4)(a)(3) creates a presumption of unsuitability if the Planning Board agrees with the new-tower-construction applicant that a co-location site is unsuitable, and the effect of the presumption is that, unless additional information is provided to the Planning Board, and the Board determines "that new technology or other considerations enables the existing or approved tower or Alternative Tower Structure to accommodate the equipment," later new-tower-construction applicants proposing to install "similar [communications] equipment" do not have to submit any evidence to the Planning Board about the unsuitability of that particular co-location site when attempting to comply with article II(Z)(4)(a)(1). Finally, article II(Z)(4)(a)(4) requires the Town to maintain a list of existing and approved co-location sites. We reject Olson and Rabin's interpretation of the Ordinance because it would increase the burden for co-location applicants, produce the illogical result of decreasing the number of sites available to co-location applicants, and ultimately result in the construction of more new towers.[5] *See Desfosses v. City of Saco*, 2015 ME 151,

---

[5] The Superior Court affirmed the Planning Board's decision by concluding that article II(Z)(4)(a)(3) applies only "when there has been a Planning Board determination that 'telecommunications equipment . . . cannot be accommodated on an existing or approved tower or Alternative Tower Structure'" and because the 2001 denial of Sprint's application expressly found

¶ 16, 128 A.3d 648 ("[W]e must interpret [the Ordinance] to avoid absurd, illogical, unreasonable, inconsistent, or anomalous results if an alternative interpretation avoids such results." (quotation marks omitted)).

[¶19]  The Planning Board did not err in declining to require Verizon to rebut a presumption of unsuitability.

B.      Investigation of Other Technically Feasible Sites

[¶20]  Olson and Rabin next assert that we should vacate the Planning Board's decision or remand for further fact-finding because the Board did not receive substantial evidence that Verizon investigated other "technically feasible sites," as required by article II(Z)(9)(c) of the zoning ordinance.

[¶21]  The Board did not make specific findings on Verizon's compliance with particular aspects of the zoning and site plan ordinances and made only the following finding: "On the basis of the application, plans, reports and other information submitted by the applicant, information from the public hearing, information and the findings and recommendations contained in [the] Planning

that the water tower itself was an appropriate structure and the denial was because of the equipment on the ground, the rebuttable presumption did not apply.  We agree with Olson and Rabin that this interpretation was incorrect because the term "telecommunications equipment" encompasses not only the antennae on the water tower, but also the equipment on the ground.  However, it is the decision of the Planning Board that we review, not the decision of the Superior Court.  *See Osprey Family Tr.*, 2016 ME 89, ¶ 9, 141 A.3d 1114.

14

Board Report dated September 23, 2016 . . . the Planning Board finds that the plan is in conformance with Chapter 702, Site Plan Review Ordinance . . . ."

[¶22] Planning Board findings must be supported by substantial evidence in the record. *See Osprey Family Tr.*, 2016 ME 89, ¶ 9, 141 A.3d 1114. The Planning Board had substantial evidence that Verizon had investigated other technically feasible sites and concluded that none was available. Although Verizon's written submissions to the Planning Board did not contain information about alternative sites that it had considered, Verizon's application included detailed information about its site selection process, and, during the May and September meetings, the Planning Board asked the Verizon representative about alternative sites that Verizon had considered. At the September 28 Planning Board meeting, a Verizon representative explained that its site selection process consisted of looking for gaps in coverage and identifying sites that would fill those gaps and have a minimal effect on the Town. Verizon's representative reported that the only feasible site for co-location was the Yarmouth Water District site because other sites were not tall enough or would not fill the coverage gap. The Director's report to the Planning Board referred to the requirement of article II(Z)(9)(c) and Verizon's description of its site selection process, and noted that "[t]his site allow[s] the

antenna to be located on an existing water tower[,] which avoids the need to construct a new tower."

[¶23] Because the Planning Board's finding was supported by substantial evidence, we will not disturb the Board's conclusion that the application met ordinance standards. *See Bizier*, 2011 ME 116, ¶¶ 8, 12, 32 A.3d 1048 ("[W]e accord substantial deference to the Planning Board's characterizations and fact-findings as to what meets ordinance standards.") (quotation marks omitted)).

The entry is:

Judgment affirmed.

---

Nathaniel A. Bessey, Esq. (orally), Brann & Isaacson, Lewiston, for appellants Frederick Olson and Leora Rabin

Philip R. Saucier, Esq. (orally), Bernstein Shur, Portland, for appellee Town of Yarmouth

Scott D. Anderson, Esq. (orally), Verrill Dana, LLP, Portland, for appellee Verizon Wireless

Cumberland County Superior Court docket number AP-2016-48
FOR CLERK REFERENCE ONLY